DELLA BROW *vs.* BOSTON AND ALBANY RAILROAD COMPANY.

Worcester.    October 4, 1892. — November 25, 1892.

Present: FIELD, C. J., HOLMES, KNOWLTON, MORTON, & LATHROP, JJ.

*Personal Injuries — Ultra Vires — Negligence of Railroad — Grade Crossing.*

In an action against a railroad company for personal injuries, it appeared that the
tracks of the A. Railroad, the B. Railroad, and the C. Railroad crossed a street
at grade, that gates were operated by a gateman, and that they were the only
gates on the whole crossing and were used when any train passed on any of the
roads.  The plaintiff was struck by a moving train on the tracks of the C. rail-
road, and the negligence of the gateman in raising the gate before the passage
of the train was the negligence relied upon by the plaintiff to sustain his action.
The gateman was employed by the A. company, which company the plaintiff
sued.  There was no express contract between the companies as to the gateman,
and no implied contract, unless one arose from the fact that the A. company
employed the gateman and paid him, and the other companies repaid the A.
company five eighths of his wages.  *Held,* that the presiding justice erred in
directing a verdict for the defendant on the ground that the action should have
been brought against the C. company.

TORT for personal injuries occasioned to the plaintiff in Wor-
cester, at a grade crossing which from the north toward the
south crossed successively the tracks of the Boston and Albany
Railroad, the New York and New England Railroad, Worcester
Division, and the New York, Providence, and Boston Railroad,
Worcester Division.

Trial in the Superior Court, before *Maynard,* J., who allowed
a bill of exceptions, in substance as follows.

The plaintiff offered to show the following facts.  The three
railroads named, leaving the Union Station westwardly, after
crossing one or two other streets at grade, cross Plymouth Street.
Proceeding along said crossing from the north to the south, the
tracks are, first, three of the Boston and Albany Railroad, then
one of the New York and New England Railroad, then two of
the New York, Providence, and Boston Railroad.  Gates are
maintained at the crossing, one across the northerly end outside
the northerly track of the Boston and Albany Railroad, and one
at the southerly end outside the southerly track of the New York,
Providence, and Boston Railroad.  They are operated mechani-

cally by a gateman, whose station is at the northerly gate along-
side the Boston and Albany Railroad track. The turning down
and opening up of this gate operates underground to turn down
and open up the other gate. These are the only gates on the
whole crossing, and were used when any train passed on any of
the roads.

The plaintiff was passing down Plymouth Street from north
to south to make the crossing and go to her house, situated just
beyond, on February 27, 1891, at a quarter past six o'clock
P. M., it being misty and dark. She offered to show that the
gates were down as she approached the crossing, and were raised
by the gateman; that two trains leave the Union Station in
Worcester westward, one on the Boston and Albany Railroad,
and one on the New York, Providence, and Boston Railroad, at
about the same time, and pass the crossing at so nearly the same
time that the gates are frequently not raised between the pas-
sage of the two trains; that close by the crossing, easterly from
the crossing and toward the Union Station, was the end of the
New York, Providence, and Boston Railroad's freight yard; that
there were frequently engines with head lights standing and mov-
ing in said yard; and that when the gate was raised by the gate-
man she passed upon the tracks, walked briskly across the tracks,
and proceeded toward the southern end of the crossing. If she
observed the headlight on the engine which struck her, she took
it to be a switch engine which would not cross the crossing.
When on the track she was struck by a moving passenger train
of the New York, Providence, and Boston Railroad, whose ap-
proach she had not discovered. She was seriously hurt, and
brought this action to recover damages. The injury received
by her was within the location of the New York, Providence,
and Boston Railroad, and was inflicted by an engine of that
road, being operated by and on the track of that road.

The negligence of the gateman in raising the gate before the
passage of this train, and thus leaving the crossing open, and
inducing her to go upon the tracks of these roads and suffer the
injury which she received, was the negligence relied upon by the
plaintiff to sustain her action.

It was agreed that the gateman was employed by the Boston
and Albany Railroad Company; that there is and has been no

express contract between the railroad companies as to the gate-man at this crossing, and no implied contract unless such implied contract arises from the following facts. It was at the time of the accident and for years before had been the practice that the Boston and Albany Railroad Company employed the gate-man and paid him, and the Providence and Worcester Railroad Company repaid the Boston and Albany three eighths of his wages, and the Norwich and Worcester Railroad Company repaid two eighths of his wages, leaving three eighths of his wages for which the Boston and Albany Company was not reimbursed. The Providence and Worcester Railroad is the road operated by the New York, Providence, and Boston Railroad Company, and the Norwich and Worcester Railroad is the road operated by the New York and New England Railroad Company.

The judge ruled that, upon this offer of proof, the action could not be maintained against the Boston and Albany Railroad Com· pany, but should have been brought against the New York, Providence, and Boston Railroad Company, and directed a verdict for the defendant; and the plaintiff alleged exceptions.

· *W. S. B. Hopkins*, (*F. B. Smith* with him,) for the plaintiff.

*F. P. Goulding*, for the defendant.

FIELD, C. J. It would have been competent for the jury to find, on the facts recited in the exceptions, that there was a contract between the railroads that the Boston and Albany Railroad Company should furnish a gateman, who should raise and lower the gates for each of the railroads at the crossing, and that the gateman actually employed was employed by the Boston and Albany Railroad Company for this purpose. It is argued that such a contract would be *ultra vires*. But when the tracks of different railroad corporations are on one road-bed, and are crossed at grade by a highway, and gates are required, it is not necessary that each railroad company should maintain gates, and it might be a source of danger if each railroad company maintained separate gates along the line of its tracks. One set of gates across the highway and outside the line of all the tracks might be the best practicable means of protecting the public from injury. ˙ We have no doubt, that when the tracks of different railroads are laid so near to each other across a highway that only one set of gates is required, the railroad companies

can enter into a contract with each other that the gates shall be erected at the common expense, and a gateman be employed as a common agent, or one company can agree with the others that it will erect the gates and employ a gateman for the benefit of all the roads.    It is therefore unnecessary to consider whether, if a corporation undertakes to do business which is beyond its corporate powers, it is liable to third persons for the negligence of its agents in the performance of this business.    See *Hutchinson* v. *Western & Atlantic Railroad*, 6 Heisk. 634.

Undoubtedly a case can be stated in which a gateman would be regarded as the separate agent of each of the railroads.    We think, however, that one inference that could be drawn from the facts stated in the exceptions is that the Boston and Albany Railroad Company undertook the management of the gates for the benefit of all the railroads.    The station of the gateman was alongside the tracks of that road, and it employed and paid him. The other roads paid to the Boston and Albany a part of his wages, but it might be inferred from the facts stated that the Boston and Albany Railroad Company exercised the exclusive right of selecting the gateman and of controlling and discharging him, and that it was in a legal sense his master.    See *Swainson* v. *Northeastern Railway*, 3 Ex. D. 341.

It does not necessarily follow from this that the New York, Providence, and Boston Railroad Company may not also be liable, either on the ground that it cannot delegate the performance of the duty of properly closing the gates to another person or corporation so as to escape liability for injuries on its road occasioned by the negligence of the gateman, or on the ground that the jury might find that it, jointly with the other roads, employed a common agent, for whose torts in the performance of his duty each and all were responsible, but these questions are not involved in the decision of this case.

*Exceptions sustained.*