## GATTON v. SLINE COMPANY, INC. ET AL.

[No. 128, October Term, 1951.]

■■■■■■■■■■■■

■■■■■■■■■■■■

*Decided April 2, 1952.*

The cause was argued before MARBURY, C. J., and DELAPLAINE, COLLINS and HENDERSON, JJ.

*Phillip Beigel,* with whom was *George Werner* on the brief, for the appellant.

*C. Damer McKenrick,* with whom were *Bartlett, Poe & Claggett* on the brief, for the appellees.

MARBURY, C. J., delivered the opinion of the Court.

Thomas H. Gatton was engaged in painting high tension transmission towers in West Virginia, under a contract made by Sline Company, Inc., the employer-appellee, with the Virginia Power Company, owner of these towers. On August 17, 1948, he was accidentally killed while engaged in this work near Ronceverte, West Virginia. His widow filed an application before the State Industrial Accident Commission of Maryland for compensation. After hearing, her claim was dismissed for want of

jurisdiction in the Commission, and on appeal to the Superior Court of Baltimore City, this action was affirmed. The widow appeals here, and the sole question involved is whether her husband was covered by the Maryland Workmen's Compensation Act while he was working in West Virginia.

The deceased lived with his brother at 1808 East Fairmount Avenue in Baltimore. There is testimony in the record that he had come from North Carolina, but it does not appear when, and, since the only positive testimony is that he lived with his brother in Baltimore, we will proceed on the assumption that he was a resident of Maryland. His brother testified that he (the brother) had been employed by Sline Company off and on since 1945 in Baltimore. Sometime between May 1 and May 5, 1948, the brother asked Cornelius Sline, president of Sline Company, whether there was a chance of his brother getting a job, He was told to tell him to go to the Company's office at 10-12 South Paca Street in Baltimore. This was done, and it was found that the brother could not get a job in Maryland because the union had no openings. Then Mr. Sline told both of the brothers, and another man, that if they went to West Virginia and reported to a Mr. Strollo, who was in charge of the job there, they might be employed. They all reported to Mr. Strollo, who told them he could not do anything for decedent until he joined the union. The brother and the other man went to work the first day, but the deceased had to see the "shop steward" and get signed up and get a permit card, so he did not go to work until May 6. From that time on, he worked on the job of painting towers until his death. Pay checks were drawn in Baltimore and sent to Strollo, and he turned over the deceased's checks to him. The rate of pay was not fixed in Baltimore. The deceased had to join the union in White Sulphur Springs, in West Virginia, before he could go to work, so that the pay was under the union wage in West Virginia. He and the other employees were not furnished transportation to

West Virginia by Sline Company. The deceased was unable to get a job in Baltimore because, for some reason, he could not join the union here. Had he been able to do so, he could have gotten a job with Sline Company here. The president of Sline Company testified that his company could not guarantee in Baltimore that the deceased would get a job in West Virginia, because Strollo, the foreman, would have to decide that in West Virginia, and, as it was a union job, he could not take any man unless the union there accepted him. He said he agreed to employ the deceased if Strollo would accept him. The other two men were apparently employed in Baltimore. The record does not show whether Gatton was included among the employees of Sline Company for whom compensation premiums were paid, but it was suggested at the oral argument that he could or should not have been, because West Virginia requires all compensation insurance to be in the state fund.

The Maryland Workmen's Compensation Law, Article 101, Sec. 67, sub-section (3), states, among other things: "This Article shall not apply * * * to casual employees or any employees who are employed wholly without the State. But for all purposes of this Article, casual, occasional or incidental employments outside of this State by the Maryland employer of an employee or employees regularly employed by said employer within this State shall be construed to be employment within this State; provided, however, if an employee or the dependents of an employee shall receive compensation or damages under the laws of any other State, nothing herein contained shall be construed so as to permit a total compensation for the same injury greater than is provided for in this Article." The deceased was not a casual employee, and his employment outside the State was not a casual, occasional or incidental employment by a Maryland employer of a workman regularly employed within this State, so that the sole question is whether he was an employee who was "employed wholly without the State". Since this is a question of the interpretation of the

Maryland statute, and since there is no question of a conflict between the Maryland law and the West Virginia law, the many decisions on this subject are not applicable here. Reference may, however, be made to *Goodrich on Conflict of Laws*, 3rd Ed., Sec. 100, beginning on page 281, where the general subject is discussed and the cases analyzed. *Restatement of the Law*, 1948 Supplement, *Conflict of Laws*, Sec. 400, makes the following statement: "No recovery can be had under the Workmen's Compensation Act of a state if neither the harm occurred nor the contract of employment was made in the state unless the Act confers in specific words, or is interperted to confer, a right of action because of the extent of the activities of the employer or employee within the state." Comment a. states: "The right of recovery because of the employment relation must be based upon an applicable statute. Normally, Workmen's Compensation Acts do not purport to apply if neither the harm occurred nor the contract of employment was made in the state. The interest of the state, however, in the employer-employee relationship or in the regulation of local enterprises, is sufficient to empower the state to allow recovery, even though the contract of employment and the injury took place outside the state."

In the recent case of *Cardillo v. Liberty Mutual Ins. Co.*, 330 U. S. 469, 67 S. Ct. 801, 806, 91 L. Ed. 1028, the Supreme Court had before it the case of a resident of the District of Columbia regularly employed there as an electrician by a local contractor, who was transferred to a project at Quantico, Virginia, and, after working there three years, was accidentally killed in Virginia while driving from his place of employment to his home in the District of Columbia. The District of Columbia act said that it should apply to the death of an employee of an employer carrying on any employment in the District of Columbia, irrespective of the place where the death occurred. The contention was made that the act was inapplicable to the case because the deceased had been employed continuously in Virginia for over three

years and did nothing within the District during that period. The court said, in construing the statute and its purpose, that "* * * the District's legitimate interest in providing adequate workmen's compensation measures for its residents does not turn on the fortuitious circumstance of the place of their work or injury." The award of compensation made in the District was sustained.

This Supreme Court case is somewhat indicative of the modern thrust of the law which stresses the purposes of workmen's compensation acts in protecting local residents and protecting the local public from having to care for them and their dependents in cases of injury. That approach has been much discussed, and it has been held that, by the weight of authority, recovery is allowable at the place of employment, irrespective of where the work is done, although there are cases to the contrary. See *Goodrich, supra,* page 284. 20 *Minn. Law Review* 19. 5 *University of Detroit Law Journal* 67. Nevertheless, all of the cases depend on the wording of the particular statutes involved. The coverage is within the province of the legislatures of the respective states, and this general approach cannot be used if the compensation law of any state expressly forbids it. *Restatement, Conflict of Laws,* Sec. 398. In the case before us, there is some question where the place of employment was. The president of his employer sent him to Virginia at his own expense to contact the foreman who was in charge of work in that state and in West Virginia. The president said that the question of whether he was employed was up to the foreman and depended on whether he could be accepted by the union of the state where he was to work. It would seem, therefore, that his engagement did not take place in Maryland, but in Virginia or West Virginia. The mere fact that his checks were drawn at the home office of the company in Maryland and sent to him signifies only that he was an employee of a Maryland employer.

However, we do not think the question of where he was actually engaged to do work affects his widow's rights

under our statute. The Legislature has seen fit to exempt from the operation of our act those who are "employed wholly without the State". That cannot mean those who enter into their contract of employment outside of the State, because otherwise the word "wholly" would have no meaning whatever. It must mean those who are employed to do work entirely or wholly outside of the State, and this is emphasized by the exception which permits casual, occasional or incidental employments outside of the State. The deceased in this case did not have a casual, occasional or incidental employment outside of the State. His employment was to work entirely outside of the State, and that is all the work he ever did for this employer. The Legislature could have caused the statute to embrace all employments of residents of this State by employers located in this State, but it did not do so, and we cannot change the plain wording of the Act.

The appellant calls attention to the case of *Bank v. Meyers & Co.*, 182 Md. 556, 35 A. 2d 110, involving a travelling salesman. As shown in that case, the Maryland Compensation Law originally did not apply to outside salesmen, but in 1924, an amendment was passed to bring certain salesmen within its provisions. The statute in question is Article 101, Sec. 33, sub-section (43), and includes salesmen who are citizens and residents of the State, and are employed by an employer having a place of business within the State. We held in that case that since the employer did not have a place of business in the State, the act did not apply to him, even though the contract of employment was actually made in Maryland. This case is inapplicable to the case before us because it involves construction of a special section of the law applicable only to travelling salesmen, and creates an exception to the general rule. The Legislature has not seen fit to make this exception apply to all employees, and the deceased in this case does not fall within any of the exceptions made generally for employees other than salesmen.

We cannot find that appellant has any basis for making a claim under the Maryland Workmen's Compensation Law. Whether she has a claim in West Virginia, or elsewhere, is a matter with which this court has nothing to do, and we can only pass upon our own statute. Under it, we do not think she is covered.

*Order affirmed with costs.*