## CHARLES FREELAND AND SONS, INC., ET AL. *v.* COUPLIN

[No. 7, October Term, 1956.]

162

*Decided November 7, 1956.*

The cause was argued before BRUNE, C. J., and COLLINS, HENDERSON and HAMMOND, JJ., and HENDERSON, J., Chief Judge of the Fourth Judicial Circuit, specially assigned.

*Philip T. McCusker,* Special Attorney for the State Accident Fund, with whom were *C. Ferdinand Sybert, Attorney General, Ernest N. Cory, Jr.,* and *U. Theodore Hayes,* Special Assistants to the Attorney General, on the brief, for appellants.

*Paul Berman,* with whom were *William M. Travers, Sigmund Levin, Theodore B. Berman* and *Turnbull & Brewster* on the brief, for appellee.

HENDERSON, J., delivered the opinion of the Court.
Genevieve Couplin, the appellee (claimant) had filed with

the State Industrial Accident Commission a claim for compensation because of the death of her husband while allegedly in the employ of Charles Freeland and Sons, Inc. (Freeland). Her claim was refused by the Commission, but an appeal by her to the Circuit Court for Baltimore County has resulted in a judgment in her favor.

Freeland, and his insurer, the State Accident Fund, have taken an appeal to this Court, basing it on two grounds. The first deals with the proceedings before the Commission. It is claimed that claimant allowed the time to expire before she took an appeal from the Commission to the Circuit Court for Baltimore County, and that the action of the Commission in reopening her claim after the expiration of such appeal period gave her no right to appeal from the second refusal to allow her claim after the matter had been reopened. As a second ground for reversal it is claimed that under all the testimony it was conclusively shown Ernest M. Couplin, claimant's husband, was an independent contractor and not an employee; that therefore defendant's prayer for a directed verdict should have been granted in the circuit court, and the case taken from the jury.

This case has been a long drawn out one. Ernest M. Couplin was killed in a logging accident on February 7th, 1952, while cutting Freeland's timber. The claim was filed with the Commission about a month later, and a hearing was held on May 19th, 1952. It was not until June 16th, 1953, that the order of the Commission was filed dismissing the claim because it found Couplin was an independent contractor, and not an employee. The next day an appeal was taken, but through inadvertence this was filed in the Superior Court of Baltimore City. When the error was discovered this appeal was dismissed; but it had then become too late to appeal to the Circuit Court for Baltimore County, which was the County where claimant lived.

On August 21st, 1953, claimant petitioned the Commission to reopen the case on the ground of newly discovered evidence. As a result of this petition testimony was taken before the Commission on November 24th, 1953. It was not until September 29th, 1954, that the Commission took any

action, and it then passed an order reopening the case but reaffirming its previous decision rejecting her claim. From this decision an appeal was taken in due time to the Circuit Court for Baltimore County, where a jury rendered a verdict in favor of claimant on December 8th, 1955.

At the time of the argument in this Court counsel for appellants called attention to Rule 12 of the Rules of Procedure before the State Industrial Accident Commission. This reads as follows:

> "Rule No. 12. Applications for a rehearing shall be in writing stating the reasons therefor and must be filed within thirty days from the date of the decision. No rehearing shall be granted except upon the grounds of error or newly discovered evidence."

This rule was not offered in evidence or passed upon in the circuit court, and will not be considered here.

Therefore it must be decided whether the Commission had the power to reopen the case more than fifteen months after its original decision refusing to allow the claim, and thereby make it possible for claimant to appeal from the second rejection of her claim more than fifteen months after she had lost the right to appeal from the Commission's first rejection.

An appeal from a decision of the Commission is authorized by Section 57 of Article 101 of the Code. It is provided that this must be taken "within thirty days following the rendition of the decision appealed from." Since the appeal from the first decision was ineffective it follows that claimant could not have taken the second appeal unless the Commission had revived a right of appeal by reopening the case and reaffirming its first decision.

If this power to reopen exists, it is by virtue of Section 53 of Article 101, the relevant part of which reads as follows:

> "53. The powers and jurisdiction of the Commission over each case shall be continuing, and it may, from time to time, make such modifications or changes with respect to former findings or orders

with respect thereto as in its opinion may be justified; provided, however, that no modification or change of any final award of compensation shall be made by the Commission unless application therefor shall be made to the Commission within three years next following the last final award of compensation, but no award shall be considered a final award under this section unless it shall have been so designated on the award by the Commission."

That the Commission does have such power to reopen has been decided in the affirmative by this Court. Three of the cases apparently relied upon by appellants decide only that an appeal from an unfavorable decision must be taken within thirty days. But none of these three cases (*Holland Mfg. Co. v. Thomas,* 136 Md. 77; *Miller v. Bethlehem Steel Co.,* 160 Md. 657; *Howell v. Beth.-Spar. Pt. Shipyard,* 190 Md. 704) had to do with the matter of reopening. They were decided under now Section 57 of the Act, which deals with appeals, and not with the right to reopen under Section 53.

The right of the Commission to reopen has been considered by this Court in a number of cases. *Bethlehem Corp. v. Simmons,* 143 Md. 506, decided in 1923, was an early case in which an appeal was allowed from a decision of the Commission refusing to reopen a case. But this case is not in point here, as it was an application based on what is now Section 42 of the Act giving special power to the Commission to reopen "If aggravation, diminution or termination of disability takes place * * *".

Nor is *Gold Dust Corp. v. Zabawa,* 159 Md. 664, controlling, as in that case the Commission had refused to reopen a case in which the claimant's claim had twice been denied. This Court held there could be no appeal from this refusal to reopen, and distinguished the *Simmons* case where the appeal had been allowed because it was as to new conditions of aggravation under now Section 42.

But *Stevenson v. Hill,* 170 Md. 676, is a precedent to sustain the action of the Commission in reopening this present case. There the Commission had awarded compensation at

a certain rate to the widow. Months later she requested the matter be reopened in order to permit her to show the earnings of the deceased had been at a greater rate than the Commission had originally decided. The Commission did reopen; this order was held improper by the circuit court, but this Court held a reopening was within the powers of the Commission under Section 54 (now Sec. 53 quoted above). In *Dyson v. Pen Mar Co., Inc.,* 195 Md. 107, *Stevenson v. Hill, supra,* was referred to as authority that the Commission has the power to reopen a case for reconsideration of a question previously decided, although none of the parties has a right to require that a case be reopened or to appeal from a refusal to comply with such a demand.

*Saf-T-Cab Service v. Terry,* 167 Md. 46, is referred to in the Stevenson opinion. In this earlier case the Commission had reopened the claim within 30 days of its first decision in order to bring in Saf-T-Cab as a joint employer of claimant. From the Commission's second decision, rendered four months after the first decision, affirming its earlier finding that Saf-T-Cab was not an employer, the claimant appealed. Both in the circuit court and in the Court of Appeals Saf-T-Cab urged that the time for appeal had expired because not taken within thirty days of the first decision. This Court affirmed the lower court in a brief opinion to the effect that under Section 54 (now 53) the Commission had authority to rescind its earlier decision, to reopen, and to make a final decision from which an appeal could be taken.

The case of *Kelly-Springfield Co. v. Roland,* 197 Md. 354, is certainly an authority to sustain the action of the Commission here. In that case claimant had been awarded temporary compensation for a disability which the Commission found was compensable because the result of an occupational disease. No appeal was taken by the employer from such decision of the Commission rendered on July 10, 1947. On September 18, 1948, claimant requested a hearing before the Commission on the two issues: (1) Is claimant permanently disabled, and (2) the percentage of permanent disability. The matter was referred to the Medical Board, whereupon employer raised the question whether claimant "was 'disabled to

any extent by reason of suffering from an occupational disease claimed to have been incurred in the course of his employment.' " And all the testimony was that the asthma, from which plaintiff was undoubtedly suffering, had never been known to occur as a result of the occupation in which claimant had been engaged. This issue and the testimony offered by the employer to support it had been objected to by claimant's counsel. Both the Medical Board and the Commission found the disability was the result of an occupational disease. This finding was upheld in the circuit court, because it was thought the employer had no right at the later date to question the previous finding that the disability was due to an occupational disease, and that the reopening had been for only a limited purpose.

On appeal this Court reversed the circuit court, holding that, the case having been reopened at the request of the claimant, the employer had a right to challenge the Commission's reaffirmance of its original decision that the disability was compensable.

The opinion went on to say:

"We think the ruling in the *Zabawa* case must be confined to cases where the Commission declines to grant a rehearing. In the case at bar, the question whether the claimant was suffering from a compensable occupational disease was raised by the employer and insurer before the Medical Board and decided by it. This finding was assigned as a ground of error in the appeal to the Commission, and in its supplemental award the Commission found that the claimant sustained a * * * 'permanent partial disability resulting from the occupational disease incurred in the course of his employment.' While the appellee did not seek to reopen the prior decision, but merely to conclude the open claim of temporary partial disability and establish a further claim of permanent partial disability, the latter claim, at least, depended upon a finding of liability which was challenged by the appellants. The previous award was not an-

nulled but it was modified and amplified by the supplemental award. We think the case falls within the rule of the *Stevenson* case, and the Commission's award is reviewable."

And, if the Commission's act of reopening a case for the purpose of determining only the matter of continuing liability permits the employer to inject an appealable issue of primary liability, *ipso facto* its unlimited reopening of a case permits an employee to raise once more as an appealable issue the question of employment.

Therefore we find that the reopening of the case by the Commission on September 29th, 1954, made it legally possible for claimant to take an appeal from its decision refusing her compensation; also it follows that the trial court was correct in overruling Freeland's motion to dismiss the appeal.

It was also urged by appellants that there was no sufficient evidence to show that Ernest R. Couplin at the time of his death was an employee of Freeland rather than an independent contractor. The Commission had decided that Couplin was an independent contractor and therefore had disallowed the widow's claim. This decision of the Commission was *prima facie* correct, and the burden of proof was on claimant to show her deceased husband was an employee. Code, 1951, Art. 101, Sec. 57. Therefore the record must be examined to determine whether there was sufficient evidence of employment to warrant the trial court in submitting to the jury the first issue as to whether Ernest R. Couplin was an employee of Freeland's.

As was said in *Williams Constr. Co. v. Bohlen,* 189 Md. 576, 579:

"It is well established that, on an appeal from a decision of the State Industrial Accident Commission, where the terms and manner of employment are undisputed, the Court should determine as a matter of law whether the injured workman was an employee or an independent contractor; but where the terms and manner of employment are disputed, and different inferences may be drawn therefrom, the is-

sue as to the relation that existed between the parties is a mixed question of law and fact to be determined by the jury under instructions from the Court. *Bogatsky v. Swerdlin,* 152 Md. 18, 135 A. 416; *Barnes v. Thomas A. Myers & Co.,* 163 Md. 206, 161 A. 279; *Board of Education of Harford County v. Reynolds,* 171 Md. 454, 459, 189 A. 246."

In *Sun Cab Co. v. Powell,* 196 Md. 572, 577, the opinion by Judge Delaplaine lists and explains the factors that are important when it becomes necessary to distinguish between an employee ("servant") and an independent contractor.

"It is generally stated that there are four elements to be considered in determining the question whether the relationship of master and servant exists. These elements are: (1) the selection and engagement of the servant, (2) the payment of wages, (3) the power of dismissal, and (4) the power of control of the servant's conduct. * * *

"In reality, the right to hire and the right to discharge are not always absolutely essential to the existence of the relationship of master and servant, although the possession of either the power to hire or the power to discharge is very strong evidence, and under some circumstances conclusive evidence, of the relationship. Actually the decisive test in determining whether the relation of master and servant exists is whether the employer has the right to control and direct the servant in the performance of his work and in the manner in which the work is to be done. * * * But in actual practice, the master usually possesses the power to hire and the power to discharge. Generally, therefore, it is a justifiable inference of fact that the person who has the power to hire and discharge workmen is their master. Such an inference cannot be drawn in every case as a matter of law. However, it is usually, if not always, found that where these powers are mentioned as *indicia* of the relationship of master and servant, the possession of

the power of control is also relied upon. *Brow v.
Boston & Albany R. Co.,* 157 Mass. 399, 402, 32 N.
E. 362."

*Restatement, Agency,* Sec. 220, Vol. 1, p. 483 lists a num-
ber of matters to be considered in passing on the relation-
ship. Only two of these, in addition to the four listed by
Judge Delaplaine, are material here. These are "(h) whether
or not the work is a part of the regular business of the em-
ployer; and (i) whether or not the parties believe they are
creating the relationship of master (employer) and servant
(employee)."

Since it is necessary to pass only on whether there was
sufficient evidence of regular employment as contrasted with
a series of contracts for cutting logs, the evidence which em-
ployer contends proves Couplin was an independent contrac-
tor will be outlined only. It is claimed that Freeland merely
contracted with Couplin to cut timber and that he was paid on
a tonnage basis for the timber cut; that Couplin chose and
paid his helpers; that Couplin chose his own time and meth-
ods to do the work; that Freeland had not listed Couplin
or his helpers among its employees insured by the State Ac-
cident Fund, nor did it pay Social Security Taxes or withhold
income taxes from payments made to him, nor carry him on
its books as an employee; that Couplin had also done similar
work for others than Freeland; Couplin used his own tools
such as saws, axes, etc., and usually used his own truck to
carry himself, his helpers and his tools to the place where he
was to cut. But sometimes Freeland took them in his truck.

But to support claimant's case there was evidence that
Couplin had been doing this same work for Freeland for
about twenty-two years; that Freeland never had any other
logger (until after Couplin's death, since which time one of
Couplin's three helpers has taken on his supervisory duties
and is carried as an employee, as are also the other two).
Couplin never cut any timber for Freeland other than Free-
land's own timber, nor except when told to do so by Freeland
who gave him instructions as to where he was to cut, as to
the amount needed, the sizes and lengths, and stumpage. Also

the cutting seems to have included access roadways for the convenience of Freeland's trucks which hauled the cut logs away, the operators of which were admittedly Freeland's employees. Freeland testified that he gave only slight supervision to Couplin's work after showing him the woods where he was to cut and giving him the necessary information as to sizes, lengths and stumpage. However, it is hard to see why supervision would be necessary with an experienced logger whose work he had seen for many years. But one remark of Freeland's may have some significance: (Record Extract p. 34) "The only supervision that is required is to see that he keeps his job by cutting the timber clean on down to the stumpage that is specified."

This seems to indicate control that could not be exercised over an independent contractor who was being paid only by the ton for cut timber. Freeland, as owner, was interested in getting as much as possible out of the standing timber, and therefore controlled the cutting to that end. Legally, as owner of timber he had the absolute right to exercise complete control over the cutting. And he exercised such right with reference to what was to be cut, approximately when it was to be cut (though Couplin chose his own working hours) and that the cutting was done according to specifications and without wastage.

There is no testimony that Couplin ever "cruised" a tract and told Freeland what he would charge him to cut according to the necessary specifications. Mrs. Couplin testified that Freeland would phone Couplin to report at such and such a place with his men ready to go to work. Sometimes such a message would be left with her to deliver to him. Neither did Freeland deny that her testimony on this was true, nor did he state that he ever got an estimate of the cost of cutting the timber on one of his tracts and agreed to pay a contract price before he told Couplin to go to work. There was also Freeland's definite statement that he could at any time terminate his relationship with Couplin (p. 37). Nor did he qualify this by saying that Couplin had the right to continue his cutting until the timber had been cut in accordance with a previous contractual arrangement.

While a coal miner is not in exactly the same situation as was Couplin there is much similarity. A miner is assigned to a "room" leading off a "heading". From there on he is on his own. He works such hours as he pleases, he furnishes his own tools and blasting powder, he digs the coal and loads it on the mine cars, and he is paid on a tonnage basis for the coal he mines and on a yardage basis for the rock he has to remove to get at the coal. And it will be recalled that coal and clay miners were the first "employees" in the State of Maryland to be protected by what was called the Miners Relief Fund (Chap. 153 of the Acts of 1910) and which was the forerunner of our Workmen's Compensation Act.

It will be seen from what has been said that there was at least some evidence to support five of the six elements mentioned above as determining factors: (1) the selection of and the long continued use of the services of Couplin; (2) the payment of compensation on a piece work basis; (3) the power of dismissal; (4) the right of control and (5) that the cutting of the timber was an essential part of the regular business of the employer. Therefore the issue of whether Couplin was an employee of Freeland was properly submitted to the jury, and we will affirm the judgment reversing the decision and order of the Commission.

*Judgment affirmed, with costs.*