826 A.2d 447

McELROY TRUCK LINES, INC.

v.

Alfons James POHOPEK.

No. 106, Sept. Term, 2001.

Court of Appeals of Maryland.

June 17, 2003.

Albert B. Randall, Jr. (Robert T. Franklin, Franklin & Prokopik, on brief), Baltimore, for petitioner.

David M. Kopstein (Dross, Levenstein, Perilman & Kopstein, Seabrook, Irving Dross, Waldorf, on brief), for respondent.

Argued before BELL, C.J., ELDRIDGE, RAKER, WILNER, CATHELL, HARRELL and BATTAGLIA, JJ.

BELL, C.J.

The issue in this case is whether, pursuant to Maryland Code (1991, 1999 Repl.Vol.) § 9–203 of the Labor and Employment Article, Alfons James Pohopek, the respondent, a Maryland resident employed as a truck driver, by a trucking company based out of state, who was required to keep and maintain the company owned tractor-trailer truck in Maryland on weekends, but whose employment involved traveling, during the week, to various states along the eastern seaboard, including sometimes Maryland, for regular pickups and deliveries, is a "covered employee." [1] Following a hearing, the Workers' Compensation Commission (the "Commission") found that it had jurisdiction and, so, concluded that he was.

---

1. Maryland Code (1991, 1999 Repl.Vol.) § 9–101(f) defines "covered employee" as "an individual listed in Subtitle 2 of this title for whom a person, a governmental unit, or a quasi-public corporation is required by law to provide coverage under this title."

A petition for judicial review was filed timely by the employer, McElroy Truck Lines, Inc., the petitioner. The Circuit Court. for St. Mary's County reversed the judgment of the Commission, ruling, on summary judgment, that jurisdiction over the matter did not lie in Maryland. Dissatisfied with the reversal of the judgment of the Commission, the respondent appealed to the Court of Special Appeals. That court agreed with the Commission and, thus, reversed the judgment of the circuit court. *Pohopek v. McElroy Truck Lines,* 140 Md.App. 235, 237, 780 A.2d 383, 384 (2001). We shall affirm the Judgment of the Court of Special Appeals.

The respondent sought employment with the petitioner by filing an application with an agent of the petitioner in North Carolina. After having been offered, and accepted, employment with the petitioner, the respondent underwent a week's training and orientation in North Carolina, during the course of which he was presented with, and signed, a Workers' Compensation Agreement. Under that agreement, all workers' compensation claims were to be "exclusively governed by the [workers'] compensation laws of the State of Alabama," [2] where the petitioner's principal place of business was located. Thereafter, the respondent was assigned a tractor-trailer leased by the petitioner, which he picked up in Virginia, and, having only a Pennsylvania commercial driver's license, at the petitioner's request, obtained a Maryland commercial driver's license.

The respondent obtained his delivery assignments by calling the petitioner's dispatchers. Mostly he called dispatchers in

---

2. The applicable provision, as relevant, provided:

"3. In further consideration of McElroy Truck Lines, Inc. hiring the employee whose duties include traveling regularly in the service of McElroy Truck Lines, Inc. in Alabama and one or more other states, it is agreed as follows:

"That any and all [workers'] compensation claims for on-the-job-injuries that I, as an employee of McElroy Truck lines, Inc. may have arising out of the operation of a motor vehicle and/or any claims that may occur in the line and scope of my employment with McElroy Truck Lines, Inc. shall be exclusively governed by the [workers'] compensation laws of the State of Alabama. . . ."

North Carolina, but he also received assignments from dispatchers in Alabama and Virginia. The respondent's deliveries were to states primarily along the eastern seaboard, from as far north as New Hampshire to as far south as Mississippi.[3] The petitioner argued, and the Circuit Court determined, that it was undisputed that, while he was employed by the petitioner, the respondent made 145 deliveries, of which only 28, or 19 percent, were in Maryland and, of 45 refueling stops, only 9 occurred in Maryland. The Circuit Court concluded: "Given these facts, [the petitioner] conducted around 80 percent of his employment activity outside the State of Maryland."

The respondent was off on weekends. When he was off, as a part of his employment agreement, the company supplied tractor-trailer was kept in Maryland near the respondent's home in St. Mary's County. In addition to looking after the tractor-trailer and its contents—it usually was loaded on Fridays for Monday morning delivery—, the respondent was responsible for its regular maintenance and appearance. The Court of Special Appeals also observed: "In the early morning hours each Monday, Pohopek would conduct a pre-trip checklist of the truck, which consisted of testing the engine, brakes, lights, and other routine mechanical components. Pohopek then, in accordance with federal requirements, updated his log book." *Pohopek*, at 237, 780 A.2d at 384.

After having worked for the petitioner for approximately six months, the respondent was involved in an accident while driving the petitioner's tractor-trailer through South Carolina. He filed in Maryland a workers' compensation claim for the injuries he sustained. The petitioner defended on the basis that the Commission had no jurisdiction over the case, that the respondent was not a "covered employee." As indicated, although the Circuit Court was persuaded, both the Commission and the Court of Special Appeals rejected that defense.

---

**3.** The Movement Listing for the respondent indicates that, in addition to the States along the seaboard, the respondent made deliveries in Tennessee, Kentucky and Ohio. He made, according to the Listing, only three deliveries to Alabama.

Whether the respondent is a "covered employer" must be determined by reference to § 9–202 and § 9–203. The former addresses the relationship between the employee and the employer, while the latter, the place of the injury. Section 9–202 makes clear that to be a "covered employee," an individual must be "in the service of an employer under an express or implied contract of apprenticeship or hire." On the other hand, § 9–203 provides:

"(a) *In general.*—Except as otherwise expressly provided, an individual is a covered employee while working for the employer of the individual:

"(1) in this State;

"(2) outside of this State on a casual, incidental, or occasional basis if the employer regularly employs the individual within this State; or

"(3) wholly outside the United States under a contract of employment made in this State for the work to be done wholly outside of the United States.

"(b) *Incidental service in State.*—(1) An individual is not a covered employee while working in this State for an employer only intermittently or temporarily if:

"(i) the individual and employer make a contract of hire in another state;

"(ii) neither the individual nor the employer is a resident of this State;

"(iii) the employer has provided workers' compensation insurance coverage under a workers' compensation or similar law of another state to cover the individual while working in this State;

"(iv) the other state recognizes the extraterritorial provisions of this title; and

"(v) the other state similarly exempts covered employees and their employers from its law.

"(2) If an individual is exempted from coverage under this subsection and injured in this State while working for the employer of the individual, the sole remedy of the

individual is the workers' compensation or similar law of the state on which the exemption is based.

"(3) A certificate from an authorized officer of the workers' compensation commission or similar unit of another state certifying that the employer is insured in that state and had provided extraterritorial insurance coverage for the employees of the employer while working within this State is prima facie evidence that the employer carries that compensation insurance.

"(c) Outside State.—Except as otherwise expressly provided, an individual who is employed wholly outside of this State is not a covered employee."

Thus, to be a "covered employee" and therefore eligible to bring, and maintain, a worker's compensation claim in this State, a worker must be an employee, § 9–202(a), and, as the Court of Special Appeals recognized, "the site of one's employment is the critical element for" making that determination. *Pohopek* at 240, 780 A.2d at 385. In this case, we are concerned only with § 9–203(a): the petitioner does not contend that the respondent was employed wholly outside of Maryland, rendering § 9–203(c) inapplicable, and although the petitioner maintains that the respondent was not regularly employed in Maryland, so that, in that sense, he was employed in Maryland only intermittently, it does not suggest that the prerequisites that make § 9–203(b) applicable are present in this case.

The gist of the petitioner's argument is that the respondent simply was not regularly employed in the State of Maryland. It asserts, noting that *Dixon v. Able Equip. Co.*, 107 Md.App. 541, 549, 668 A.2d 1009, 1012 (1995), indicated that " 'regular' implies a uniform course of conduct" and relying on what the Movement Listing for the respondent shows, that about 80 percent of the respondent's trips were to places other than Maryland, that the respondent's employment in Maryland lacked the required uniformity of conduct. The petitioner argues, alternatively, that, even if the respondent were regularly employed in this State, his employment outside the State

cannot be characterized, logically or appropriately, as "casual, incidental or occasional."

Relying on the same case and the same definition, the Court of Special Appeals concluded otherwise with respect to the regularity of the respondent's employment in Maryland. Noting the *Dixon* court's acknowledgment that there is "no particular formula for establishing 'regular' employment" and evaluating the case on its facts, 140 Md.App. at 241, 780 A.2d at 386, the intermediate appellate court reasoned:

"Here, the consistency of Pohopek's schedule and the employment responsibilities he carried out within the State persuade us to find regularity in Pohopek's Maryland employment. Pohopek was not commuting to work in another state on a daily or regular basis, but, instead, he was based out of Maryland and traveled regularly, albeit extensively, as part of his routine employment."

*Id.* Turning to the respondent's employment outside the State, the court conceded that it was, like his employment in State, regular. *Id.* Nevertheless, it held:

"[O]ur finding that Pohopek regularly works outside the State is inherently a finding that Pohopek does not work wholly outside the State, and, therefore, under *Dixon* and *Garrett*,[4] Pohopek's work outside the State must be inter-

---

4. The Court of Special Appeals, in the case *sub judice* stated, "if an employee works outside the State but does not work wholly outside the State, then the employee's work outside the State is said to be casual." *Pohopek* at 242, 780 A.2d at 387. For that proposition, it relied upon its earlier cases of *Dixon v. Able Equip. Co.*, 107 Md.App. 541, 546, 668 A.2d 1009,1011 (1995) and *L.R. Willson & Sons v. Garrett*, 76 Md.App. 120, 126–27, 543 A.2d 875, 878 (1988). Before the court in *Garrett* was the predecessor of § 9–203(a), Maryland Code (1957, 1985 Replacement Volume) art. 101, § 21(c)(4), which provided:

"(c) Exemptions.—The following employees are exempt from the coverage of this act:

"(4) Casual employees or any employees who are employed wholly without the State, except that for all purposes of this article, casual, occasional or incidental employments outside of this State by the Maryland employer of an employee or employees regularly employed by said employer within this State shall be construed to be employment within this State...."

preted as casual. *Dixon* and *Garrett* essentially instruct us that the finding of regular employment outside of the State is inconsequential, until there is a finding of casual employment within the State, which triggers Section 9–203(b). Until there is a finding of casual employment within the State, the only determinative status of work outside of the State is either 'whole' or 'casual.' Under our interpretation, Pohopek is covered under subsection (a)(2), because his work outside of the State is said to be casual (because it is not whole), while his work within the State is said to be regular, because of the uniformity of his schedule and employment responsibilities in Maryland."

*Id.* at 242–43, 780 A.2d at 387.

This Court has not addressed the precise question this case presents. We have, however, interpreted a predecessor of § 9–203(a), Maryland Code (1939, 1947 Cum.Supp.) Art. 101, § 67(3),[5] *see Gatton v. Sline Co.,* 199 Md. 578, 87 A.2d 524

---

The *Garrett* court affirmed the award of workers' compensation to an employee who was hired in Maryland, by a Maryland corporation doing business in Maryland, Virginia and the District of Columbia, and worked during the entire period before being injured in Virginia, 76 Md.App. at 122, 543 A.2d at 876, but who testified that he was promised work in Maryland in the future. *Id.* at 124–25, 543 A.2d at 877. It explained its decision as follows:

"That [Garrett], a Maryland resident, was hired at the main office of a Maryland company engaged in business in Maryland, Virginia and the District of Columbia; that [Garrett] was hired as a full-time employee; that he was told that the Virginia job would last approximately 12 to 13 weeks, after which he would be assigned to a worksite in Maryland; and that [Garrett] received tools from Willson when he was hired, are all facts from which it could have been concluded that [Garrett] was not 'employed to do work entirely or wholly outside of the State' and, therefore, that his work in Virginia was 'incidental employment outside of the State.' "

*Id.* at 127, 543 A.2d at 878.

5. Maryland Code (1939, 1947 Cum.Supp.) Art. 101, § 67(3), as pertinent to this issue, provided:

"But for all purposes of this Article, casual, occasional or incidental employments outside of this State by the Maryland employer of an employee or employees regularly employed by said employer within this State shall be construed to be employment within this State; provided, however, if an employee or the dependents of an employee

(1952), and considered the meaning of "casual employees" in the context of statutory provisions excluding such employees from the coverage of the workers' compensation laws. *See, e.g. Wood v. Abell,* 268 Md. 214, 221, 300 A.2d 665 (1973); *Lupton v. McDonald,* 241 Md. 446, 217 A.2d 262 (1966); *Clayburn v. Soueid, Inc.* 239 Md. 331, 211 A.2d 728 (1965); *East v. Skelly,* 207 Md. 537, 114 A.2d 822 (1955); *Moore v. Clarke,* 171 Md. 39, 187 A. 887 (1936); *Marvil v. Elliott,* 164 Md. 659, 165 A. 822 (1933); *Hygeia Ice & Coal Co. v. Schaeffer,* 152 Md. 231, 238, 136 A. 548 (1927); *State Accident Fund v. Jacobs,* 134 Md. 133, 106 A. 255 (1919).

In *Gatton,* the employer was a Maryland company, with offices in Baltimore City, that worked jobs in other states, including, West Virginia. Gatton, who was accidentally killed while working for the company in West Virginia, was turned down when he applied for a job at the company's Baltimore office, there being no union openings. As directed, he went to the company's job site in West Virginia. After being instructed that he had to before he could do work on the West Virginia job, he joined the union in West Virginia, was hired and worked on the West Virginia job. Although his paychecks were drawn in Baltimore City and sent to him at the job site, he was paid according to the West Virginia union wage scale. The evidence was that Gatton was not provided transportation to West Virginia and that the decision to hire him was made by the job foreman in West Virginia. 199 Md. 578 at 580–81, 87 A.2d at 524–25.

The Court summarily disposed of the question whether Gatton was a casual employee, concluding that his employment outside the State was not a casual, occasional or incidental employment by a Maryland employer of a workman regularly employed within this State, so that the sole question is whether he was an employee who was "employed wholly without the

shall receive compensation or damages under the laws of any other State, nothing herein contained shall be construed so as to permit a total compensation for the same injury greater than is provided for in this Article."

State." *Id.* at 581, 87 A.2d at 525. It held that Gatton was hired to work entirely and wholly outside the State of Maryland and, thus, his wife could not claim benefits under the Maryland's Workers' Compensation Act. *Id.* at 584–85, 87 A.2d at 526–27. The Court made clear, however, that the place of employment—where the employee was hired—is not dispositive:

"However, we do not think the question of where he was actually engaged to do work affects his widow's rights under our statute. The Legislature has seen fit to exempt from the operation of our act those who are 'employed wholly without the State.' That cannot mean those who enter into their contract of employment outside of the State, because otherwise the word 'wholly' would have no meaning whatever. It must mean those who are employed to do work entirely or wholly outside of the State, and this is emphasized by the exception which permits casual, occasional or incidental employment outside of the State. The deceased in this case did not have a casual, occasional or incidental employment outside of the State. His employment was to work entirely outside of the State, and that is all the work he ever did for this employer. The Legislature could have caused the statute to embrace all employments of residents of this State by employers located in this State, but it did not do so, and we cannot change the plain wording of the Act."

*Id.,* 199 Md. at 583–84, 87 A.2d at 526.

The Court of Special Appeals, in *L.R. Willson & Sons v. Garrett,* 76 Md.App. 120, 543 A.2d 875 (1988), relied on this passage to reject the argument that an employee who worked only out of State for a Maryland employer, but was promised an in-state job site at the earliest opportunity, was not entitled, as a matter of law, to workers' compensation benefits.[6] *Id.* at 126–27, 543 A.2d at 878. It explained:

---

6. It is well settled in Maryland that where the essential terms and manner of employment are undisputed, the issue as to the relation between the parties and the nature of the employment is one of law for

"As *Gatton* demonstrates, the Court of Appeals has given § 21(c)(4) [7] a broader interpretation than that urged by appellants. This is shown by the fact that it emphasized that the relevant inquiry is whether the employee is 'employed to do work entirely or wholly outside of the State' and by its reference to the exceptions for casual, occasional or incidental employment outside of the State. Thus, although we agree with appellants that, where an employee is 'actually engaged' is not dispositive, we disagree that the only relevant factor to be considered is where the employee actually worked. We think it necessarily follows from the Court's interpretation of the statute that the question whether an employee was employed to work wholly outside of the State of Maryland is to be determined from the facts and circumstances of each case."

*Id.*

Although, as indicated, this Court has considered the term, "casual employee" in a number of cases, it has, as have courts generally, "refrained from giving a definition ... which must govern in all cases." *Hygeia Ice & Coal Co.*, 152 Md. at 238, 136 A. at 551. *See Wood v. Abell*, 268 Md. at 221, 300 A.2d at 669. Instead, we have consistently held that the decision in any case was to be determined by *"its peculiar facts and circumstances."* *Id.* (quoting *Hygeia* at 238, 136 A. at 551). What has resulted has been the development of "an elastic test for determining whether an employee is 'casual' or 'regu-

---

the Court. *Criminal Injuries Comp. Bd. v. Gould,* 273 Md. 486, 519, 331 A.2d 55, 75 (1975); *Clayburn v. Soueid,* 239 Md. 331, 337, 211 A.2d 728, 731 (1965); *Charles Freeland & Sons v. Couplin,* 211 Md. 160, 168, 126 A.2d 606, 611 (1956). This applies to the question of whether the employment is casual, *see, e.g. Wood v. Abell,* 268 Md. 214, 226, 300 A.2d 665, 671 (1973); *East v. Skelly,* 207 Md. 537, 538, 114 A.2d 822 (1955), or not. *Clayburn* at 340, 211 A.2d at 732. *See State Accident Fund v. Jacobs,* 134 Md. 133, 106 A. 255 (1919).

7. *Gatton v. Sline Co.,* 199 Md. 578, 87 A.2d 524 (1952) actually interpreted the predecessor to § 21(c)(4), § 67(3); however, as the intermediate appellate court recognized in *Garrett,* the pertinent part of that section was virtually identical to § 21(c)(4). *Garrett,* 76 Md.App. at 125 n. 3, 543 A.2d at 877 n. 3.

lar,'" with the factors to be considered being the nature of the employer's work, the scope and purpose of the hiring and the duration of the employment, *Wood* at 223, 300 A.2d at 670, "whether it is occasional, incidental, accidental, or a usual concomitant of the employer's business." *Moore* at 53, 187 A. at 894. *See Clayburn* at 337, 211 A.2d at 731.

This Court has held, where the essential terms and manner of employment is undisputed, *see Clayburn* at 337, 211 A.2d at 731, that the worker has been hired to perform a single service on a single or particular occasion, that the employment was casual. *Lupton* at 450–51, 217 A.2d at 264. *See Wood* at 223, 300 A.2d at 670; *East* at 540, 114 A.2d at 823; *Moore* 171 Md. at 53, 187 A. at 893–94; *Marvil v. Elliott,* 164 Md. 659, 165 A. 822 (1933).

In *Wood v. Abell,* the worker was hired to help prepare the local fairgrounds for an upcoming event. Aside from the fact that he was to do various odd jobs as required by the county fair association and would be paid by the hour, there was "[n]o definite understanding . . . concerning the duration of their employment, but it was generally expected that [his] services would be needed for approximately one or two weeks. Clearly, no decision was reached that [he] would be employed in the future or that the job[ ] would be continuous." 268 Md. at 217, 300 A.2d at 667. We noted also, quoting the testimony of the general manager of the county fair association, that the worker was hired to do odd jobs, on an indefinite basis, "like on call." *Id.* at 224, 300 A.2d at 670.

*Lupton v. McDonald* involved an injury to a worker who had been hired to "help finish the job" that the employer's previous employee had abandoned. 241 Md. at 449, 217 A.2d at 264. The evidence was undisputed that the duration of the job was short, no more than one day, and that there was no prior relationship between the employer and the worker. Concluding that the worker was a casual employee, the Court noted that "[t]he nature of the work was temporary, the duration of the employment was only for a day, and it was occasional and incidental." *Id.* at 450, 217 A.2d at 264. The

Court rejected the argument that the scope and purpose of the hiring must be considered, along with duration and regularity of service, in determining whether the employment was casual, explaining:

"But the scope and purpose of Lupton's hiring by Milburn was only to complete the work which Lupton's predecessor had left unfinished; the hiring was confined to completing a specific job on a particular piece of land which might 'possibly' take a day. Lupton also refers to the definition of casual employment given in 1 Larson, *Workmen's Compensation*, § 51.00 (1965), that 'Employment is casual when it is irregular, unpredictable, sporadic and brief in nature.' Here, the employment was not only irregular but for a single occasion; Milburn had never employed Lupton before and had no plans to engage him for the future. It was unpredictable and sporadic, in that Lupton was only hired because Marx, who had originally been engaged by Milburn to do the work, had left the job. The hiring was clearly brief in nature."

*Id.* at 451, 217 A.2d at 265.

*East v. Skelly* and *Moore v. Clarke* both involved jockeys and, in both, the Court concluded, as a matter of law, that the jockeys were casual employees. In *Moore v. Clarke*, the jockey, who was regularly employed by a trainer to ride that trainer's horses, was hired solely to ride a horse in a race, by the horse's owner, with whom he had no on-going relationship. Explaining our decision, we said:

"In this case the employment extended over a period of but a few minutes at most, and while it was a part of a business in which the employer was regularly engaged, it was single isolated, complete in itself, was connected with no past or future employment, and when it was finished all contractual relations between the employer and the employee ceased. It was incidental and fortuitous in the sense that, while the employer must have employed some one to ride her horse, she was under no obligation to employ Hanford, and that while his business was riding horses in races, he was, until she employed him for that service, under no obligation to

ride her horse in that race, or indeed to ride in it at all. The distinction between a casual employment and a regular employment is illustrated by his relation to Burch, by whom he was employed at a fixed monthly compensation to ride Burch's horses, when requested by Burch, in any race in which they were entered, and his relation to Mrs. Clarke, by whom he was employed for a single race."

171 Md. at 54, 187 A. at 894.

The jockey in *East v. Skelly* was a free lance jockey, who had ridden horses for the same owner some ten or twelve times during a six or seven month period, or about two percent of the races he had ridden during that time frame. 207 Md. at 539, 114 A.2d at 823. We noted "a complete analogy" between that case and *Moore v. Clarke*, which we explained, as follows:

"The jockey in the earlier case was a contract rider for a well known trainer of a public stable. As is usually the case, he was free to ride in any race in which his employer did not have a horse entered. In the race in which he was killed, he was doing that, and riding for a trainer for whom he had ridden a number of times during the meet and for whom, but for the accident, he would have presumably ridden in the future. The methods of employment, the methods of payment and all significant facts are the same in the two cases."

*Id.* at 541, 114 A.2d at 823–24. Accordingly, we reached the same result, holding that the jockey was a "casual employee."

In *Marvil v. Elliott,* a carpenter, hired to remove shingles from the eaves of a building, was injured when he fell from a ladder. Addressing the question presented, whether the injured worker was entitled to an award of workers' compensation as an employee, the Court opined:

"In the present case, the appellee was allowed by a property owner for whom he was working to be engaged temporarily by a contractor in charge of other work on the same premises. Upon the completion of the task to which the appellee was thus assigned, and which would probably have

required not more than two or three hours for its performance, he was to resume his work for the first employer. The brief service he was undertaking to render for the contractor had no relation to any engagement between them in the past or future. It was limited to a particular occasion beginning and ending within a short portion of a single day. In view of its restricted scope and purpose, it must be regarded as casual within the meaning of the Maryland statute."

164 Md. at 665, 165 A. at 824.

These cases are to be contrasted with those in which the Court concluded that the employment was "regular," not "casual." *Clayburn v. Soueid, Inc.*, 239 Md. at 337, 211 A.2d at 731; *State Accident Fund v. Jacobs*, 134 Md. 133, 106 A. 255 (1919). In *Clayburn v. Soueid, Inc.* we explained why the worker in that case was not a "casual employee" and, thus, a "regular" one:

"The work which Clayburn performed for Soueid was essential to Soueid's business of building houses. Soueid sub-let the work of building the houses, but engaged laborers, of whom Clayburn was one, in the cleaning of the houses after they were built, laying drain, leveling the ground, moving material from one location to another, and general laborer's work. This work was necessary in connection with each of the houses Soueid was building. Clayburn was taken by Soueid from one location to another and always worked under Soueid's personal direction. The work was not seasonal, except in the sense that, being largely performed out of doors, the weather had to be favorable. The work did not have to be performed continuously, but it was necessary at certain stages of each building operation, and Soueid built houses steadily. Clayburn testified, without contradiction, that after Soueid first engaged him from the labor pool, Soueid told him he would give him a steady job, and Clayburn said that this was what he was looking for. After a few days, Soueid raised Clayburn's pay, and called for him, not at the place where the other men, in a labor pool, awaited day's employment, but at another location previous-

ly agreed upon between the two men. During the entire period, Clayburn worked for no one except Soueid, except for a day or two between April 3 and 8, when Soueid had said he would be out of town. The evidence is clear that Clayburn's employment by Soueid was steady and pursuant to a continuing and individually arranged agreement.

*Id.* at 340, 211 A.2d at 732–33.

The Court relied on *Jacobs*, in which the worker, a farmer and a teamster, was hired early in the canning season "to work for [the employer] at such times as I might need him, and he promised to help me out at all such times as I might call upon him." 134 Md. at 134, 106 A. at 255. Receiving during the season, "the same wages paid all the time," the worker had been called on repeatedly for hauling, which he did. *Id.* We concluded that the worker was not a "casual employee." Noting that the determination of the nature of an employment relation must be made "with principal reference to the scope and purpose of the hiring rather than with sole regard to the duration and regularity of the service," *id.* at 135, 106 A. at 255, we observed:

"One who enters into a contract of employment for an entire season is not a casual employee merely because he may be required to work for only a short and irregular periods. When there is a continuing engagement to serve the employer in his business at such times as the particular and essential service may be needed, the employment is not 'casual' according to any of the judicial definitions of that term. In this case the service required and rendered was occasional, but it was in pursuance of an engagement covering the whole of the working season at the employer's plant."

*Id.* at 135, 106 A. at 255–56. We held that the worker was injured, and his death therefore resulted from, engaging in work that was a necessary part of the employer's business, work that was done "under an employment which was not limited to the hauling then in progress, but applied to every recurring occasion for such assistance during the whole of one

of the annual productive periods of the employer's enterprise." *Id.* at 136, 106 A. at 256.

■ We may glean from the foregoing that where the facts and the circumstances of a given case reveal that the undertaking by the worker, on behalf of the employer, is not pursuant to an agreement providing for a continuous employment relationship, is of short duration and/or is temporary or sporadic, the employment, and therefore the employee, is "casual." On the other hand, where the facts and circumstances reveal an agreement or arrangement, continuous in nature, calling for the worker to work for the employer, as and when the particular and essential requirements of the business demand, the employment, and therefore the employee, is not "casual." And this is true whatever the duration or nature of any one or more of the component undertakings.

It is undisputed that there is an employment relationship between the petitioner and the respondent; the respondent regularly makes deliveries all along the east coast, driving the petitioner's tractor-trailer. Apropos the issue with which we are presented, whether the regular employment is in Maryland, the arrangement contemplates a regular presence in Maryland. The respondent begins, and ends, his work week in Maryland and the petitioner's tractor-trailer is kept in Maryland. In regard to the latter responsibility, the respondent is charged with its safekeeping and the safekeeping of any cargo that it might contain. Moreover, the respondent is responsible for the maintenance of the tractor-trailer. We believe these facts and circumstances suffice to establish that the respondent's employment in Maryland, rather than being "casual," was "regular." This is consistent with the holding of the Court of Special Appeals, which, as we have seen, relying on the definition of "regular" enunciated in *Dixon*, i.e. "a uniform course of conduct," was persuaded by the consistency of the respondent's schedule and job responsibilities. *Pohopek* at 240–41, 780 A.2d at 386, (quoting *Dixon v. Able Equip. Co.* 107 Md.App. at 549, 668 A.2d at 1012).

The Court of Special Appeals determined, however, that the respondent was also regularly employed outside the State of Maryland, but that finding, in and of itself, was necessarily one that the respondent's employment outside the State was only "casual"—reasoning that only employment wholly outside the State would preclude a compensation award to an employee regularly employed in State. *Pohopek*, 140 Md.App. at 241, 780 A.2d at 386. To be sure, the respondent spends a considerable amount of his time working for the petitioner outside the State of Maryland, about 80 percent, judging from the petitioner's Movement Listing for the respondent. That—considering all of the employment activity outside the State as a whole—does seem to qualify as regular employment. Tractor-trailer drivers, however, "constitute a unique class of employees whose activity, by its very nature, is transient. The fact that a truck driver may spend a significant amount of time in one State does not detract from the essentially transitory nature of the activity in which he engages." *Cowger v. The Industrial Commission*, 313 Ill.App.3d 364, 374, 245 Ill.Dec. 707, 728 N.E.2d 789, 796 (2000), quoting *Patton v. Industrial Comm'n*, 147 Ill.App.3d 738, 745, 101 Ill.Dec. 215, 498 N.E.2d 539, 544 (1986). *See also* 9 A. Larson & L. Larson *Workers' Compensation Law* § 143.04[2][c] (2003), in which it is said:

"In some kinds of employment, like trucking, flying, selling, or construction work, the employee may be constantly coming and going without spending any longer sustained periods in the local state than anywhere else; but a status rooted in the local state by the original creation of the employment relation there, is not lost merely on the strength of the relative amount of time spent in the local state as against foreign states. An employee loses this status only when his or her regular employment becomes centralized and fixed so clearly in another state that any return to the original state would itself be only casual, incidental and temporary by comparison. This transference will never happen as long as the employee's presence in any

state, even including the original state, is by the nature of the employment brief and transitory."

Thus, while, when viewed together, the amount of employment activity outside the State dwarfs the amount in State, when each location to which the respondent travels making deliveries and pick-ups is considered separately, the respondent's presence in none of them is substantially greater than in Maryland. Indeed, the respondent's presence in Alabama, the place to which the agreement refers and which the petitioner suggests is the proper situs for the compensation action, is considerably less.

Professor Larson, *Cowger* and *Patton* all addressed the situation in which the place where the employment was contracted is determinative of the situs of the employment relation for purposes of jurisdiction to award workers' compensation. In this case, the place at which the employment relation was formalized was North Carolina, rather than Alabama. Under their rationale, the situs of the employment relation would be North Carolina and, therefore, the jurisdiction to resolve workers' compensation issues arising out of that relationship. That situs would remain unless and until the employee's regular employment becomes fixed clearly in another State; it is not sufficient that the relative amount of time spent in the local State is less, even considerably so, than that spent in the foreign states.

In Maryland, the place where the employment was contracted is not the dispositive factor. *Gatton*, 199 Md. at 583–84, 87 A.2d at 526. That factor is whether the employment in Maryland is regular when compared to the employment outside Maryland. That comparison, when the employment itself is transitory, is between the State where the employment has been found to be regular and each of the other locations to which the employment has a relationship. Thus, it is not the whole of the employment outside the State that is considered, it is only that in some other State that surpasses the "casual." As Professor Larson points out, "a status rooted in the local state ... is not lost merely on the

strength of the relative amount of time spent in the local state as against foreign states. An employee loses this status only when his or her regular employment becomes centralized and fixed so clearly in another state that any return to the original state would itself be only casual, incidental and temporary by comparison." 9 A. Larson & L. Larson, *Workers' Compensation Law* § 143.04[2][c] (2003).

We hold that the respondent was regularly employed in Maryland and that his employment activity in none of the other states in which he makes deliveries and pick-ups is, by comparison, other than "casual, occasional or incidental." Accordingly, the judgment of the Court of Special Appeals is affirmed.

JUDGMENT AFFIRMED, WITH COSTS.