838 A.2d 397

Larry T. FITZGERALD

v.

R & R TRUCKING, INC., et al.

No. 58, Sept. Term, 2003.

Court of Special Appeals of Maryland.

Dec. 11, 2003.

David B. Jackson (Ingerman & Horwitz, LLP, on the brief), Baltimore, for Appellant.

Joel E. Ogden (Semmes, Bowen & Semmes, on the brief), Baltimore, for Appellees.

Panel: DAVIS, DEBORAH S. EYLER, and BARBERA, JJ.

DAVIS, Judge.

On August 24, 2001, appellant Larry T. Fitzgerald filed a claim with the Maryland Workers' Compensation Commission (Commission). The claim emanated from a work-related accident that occurred on January 10, 2001, when appellant slipped and fell on ice at a Pennsylvania truck stop. On March 22, 2002, a hearing was held before the Commission on the issue of whether Maryland had jurisdiction over appellant's claim. In an order dated April 22, 2002, the Commission concluded that Maryland did have jurisdiction over the claim. Appellee R & R Trucking, Inc. appealed the Commission's decision to the Circuit Court of Wicomico County on May 2, 2002. Both parties filed motions for summary judgment and a hearing was held on January 10, 2003. The trial court granted appellee's motion for summary judgment and therefore reversed the decision of the Commission by concluding that Maryland did not have jurisdiction over appellant's claim. Appellant filed a Motion for Reconsideration on January 22, 2003 and the motion was denied on March 6, 2003. Subsequently, appellant noted his timely appeal on March 25, 2003, presenting one question for our review, which we rephrase as follows:

Did the trial court err in granting appellee's motion for summary judgment?

We answer appellant's question in the negative and affirm the judgment of the trial court.

## FACTUAL BACKGROUND

Appellant, a resident of Maryland, applied for employment as a tractor-trailer driver with appellee in August 2000. Appellee, a trucking company headquartered in Joplin, Missouri, has no offices in Maryland and, thus, appellant traveled to Missouri to apply for employment. After accepting a position, appellant operated a tractor-trailer for appellee from approximately August 14, 2000 until January 10, 2001. During that time, appellee provided a truck for appellant to drive and dispatched driving assignments to him via satellite radio. The driving assignments were random, requiring appellant to travel throughout most of the United States. The only semi-regular route traveled by appellant was between Landover, Maryland and Oklahoma City, Oklahoma. Appellant made the Landover/Oklahoma City trip approximately nine times in the months of November and December 2000, hauling mail for the holiday season.

Although appellant frequently passed through Maryland en route to other destinations and occasionally made deliveries in Maryland, such as Landover, he rarely visited his Maryland residence.[1] Instead, appellant spent most of the five months of his employment traveling and sleeping in his truck. When appellant did travel home, he parked his truck in Maryland at a relative's residence. The employment relationship also required that appellee withhold Maryland income taxes from appellant's paychecks and that the paychecks be directly deposited into appellant's checking account at a bank in Maryland. It is undisputed that appellant had a Maryland commercial driver's license (CDL) at the time he applied for employment, but the parties disagree on whether appellee required appellant to obtain a Maryland CDL Hazardous–Material (Haz–Mat) license, which is required for the transportation of hazardous materials.

---

1. Appellant testified before the Commission that, between October 15, 2000 and January 10, 2001, he only visited his Maryland residence once.

On January 10, 2001, appellant slipped and fell on ice in the parking lot of a truck stop in Madison, Pennsylvania, resulting in an injury to his left shoulder. At the time of the accident, appellant was driving a tractor-trailer for appellee to a destination in New York State and, therefore, the parties do not dispute that appellant was within the scope of employment when he fell at the truck stop. Following the accident, appellant did not immediately seek medical treatment but instead continued on his delivery route, which eventually ended in Joplin, Missouri. While in Joplin, appellant received medical treatment, including surgery, which was performed on February 20, 2001. Also, workers' compensation benefits were initiated in Missouri, covering appellant's lost wages and medical benefits. Subsequently, appellant returned to Maryland and, on August 24, 2001, he filed a claim with the Maryland Workers' Compensation Commission.

On March 22, 2002, a hearing was held before the Commission. The primary issue addressed at the hearing was whether Maryland was the proper jurisdiction for appellant's claim. Appellee argued that Maryland was not the appropriate jurisdiction because appellant was not a regular employee in Maryland. Appellee suggested that Missouri was the correct jurisdiction because appellant applied for employment, initially received medical treatment, and received workers' compensation benefits in Missouri. The Commission disagreed with appellee and ruled, on April 22, 2002, that Maryland did have jurisdiction over the claim.

Appellee appealed the decision of the Commission to the Circuit Court for Wicomico County on May 2, 2002. As we noted, appellant and appellee both filed motions for summary judgment and, after the court granted appellee's motion for summary judgment and denied appellant's motion for reconsideration, this appeal followed.

## LEGAL ANALYSIS

Appellant contends that the trial court erred by granting summary judgment in favor of appellee. Specifically, appel-

lant asserts that he is a "covered employee" under Md. Code (1999 Repl. Vol.), Lab. & Empl. (L.E.) § 9–203 and, therefore, that Maryland has jurisdiction over his claim. For support, appellant primarily cites *Pohopek v. McElroy Truck Lines, Inc.* 140 Md.App. 235, 780 A.2d 383 (2001) [*Pohopek I*], *aff'd*, *McElroy Truck Lines, Inc. v. Pohopek*, 375 Md. 574, 826 A.2d 474 (2003) [*Pohopek II*].[2] According to appellant, *Pohopek* is almost factually identical to the case *sub judice* because it also dealt with whether a tractor-trailer driver was a "covered employee" for purposes of a Maryland workers' compensation claim under L.E. § 9–203. Appellant contends that, in *Pohopek* and the instant case, both drivers applied to a company based in another state, had paychecks mailed to Maryland, had Maryland taxes withheld, were required to obtain a Maryland license, and began and ended each trip in Maryland. Because this Court and the Court of Appeals both decided in *Pohopek* that the truck driver was a "covered employee" and that Maryland was the proper jurisdiction, appellant argues we should also conclude that Maryland is the proper jurisdiction for his workers' compensation claim.

Appellee posits that appellant is not a "covered employee" under L.E. § 9–203 because the facts in the instant case are substantially different from those observed in *Pohopek*. The case *sub judice*, it says, is governed by *Dixon v. Able Equipment Co.*, 107 Md.App. 541, 668 A.2d 1009 (1995).

"When granting summary judgment, the circuit court makes rulings as a matter of law and does not resolve disputed issues of fact." *Pohopek I*, 140 Md.App. at 238, 780 A.2d 383. The trial court shall enter summary judgment when the moving party shows that "there is no genuine dispute as to any material fact and that the party in whose favor judgment is entered is entitled to judgment as a matter of law." Md. Rule 2–501(e) (2001). Thus, the standard of review for summary judgment is whether the circuit court is legally correct. *Bow-*

---

2. *Pohopek I* and *Pohopek II* share identical facts. As a result, any reference to the facts of the two cases will be identified with the name *Pohopek*.

*en v. Smith,* 342 Md. 449, 454, 677 A.2d 81 (1996); *Pohopek I,* 140 Md.App. at 238, 780 A.2d 383. The appropriateness of the summary judgment in the case *sub judice,* therefore, depends on whether the trial court was legally correct in its ruling that appellant was not a "covered employee" under L.E. § 9–203.

Section 9–203 provides:

§ 9–203 Site of Employment

(a) *In general.*—Except as otherwise expressly provided, an individual is a covered employee while working for the employer of the individual:

(1) in this State;

(2) outside of this State on a casual, incidental, or occasional basis if the employer regularly employs the individual within this State; or

(3) wholly outside the United States under a contract of employment made in this State for the work to be done wholly outside of the United States

(b) *Incidental service in State.*—(1) An individual is not a covered employee while working in this State for an employer only intermittently or temporarily if:

(i) the individual and employer make a contract of hire in another state;

(ii) neither the individual nor the employer is a resident of this State;

(iii) the employer has provided workers' compensation insurance coverage under a workers' compensation or similar law of another state to cover the individual while working in this State;

(iv) the other state recognizes the extraterritorial provisions of this title; and

(v) the other state similarly exempts covered employees and their employers from its law.

(2) If an individual is exempted from coverage under this subsection and injured in this State while working for the employer of the individual, the sole remedy of the individual

is the workers' compensation or similar law of the state on which the exemption is based.

(3) A certificate from an authorized officer of the workers' compensation commission or similar unit of another state certifying that the employer is insured in that state and has provided extraterritorial insurance coverage for the employees of the employer while working within this State is *prima facie* evidence that the employer carries that compensation insurance.

(c) *Outside State.*—Except as otherwise expressly provided, an individual who is employed wholly outside of this State is not a covered employee.

In order for appellant to be eligible for Maryland workers' compensation benefits, he must be a "covered employee" under L.E. § 9–203(a). At the time of the accident, appellant was neither working exclusively in Maryland nor working outside the United States under a contract made in Maryland and therefore L.E. § 9–203(a)(1) and L.E. § 9–203(a)(3) do not apply. Appellant was instead working in Pennsylvania when he fell and consequently the only portion of L.E. § 9–203(a) which has any potential application is L.E. § 9–203(a)(2). In order for L.E. 9–203(a)(2) to apply, appellant must be "regularly" employed in Maryland while working outside of Maryland on a "casual, incidental, or occasional basis."

The remaining subsections of L.E. § 9–203 are also inapplicable. Although appellee argues that appellant was not regularly employed in Maryland and, thus, that he was employed only on an intermittent basis in Maryland, appellee does not claim that the requirements of L.E. § 9–203(b) are satisfied in the present case. Likewise, L.E. § 9–203(c) is inapplicable because appellee does not suggest that appellant was employed wholly outside of Maryland. Therefore, the only applicable portion of the statute is L.E. § 9–203(a)(2).

The lower court ruled that appellant was not a "covered employee" under L.E. § 9–203(a)(2). Specifically, the trial court, citing *Dixon*, concluded that there was no "regularity of employment" in Maryland because appellant's presence in

Maryland was "more a matter of chance than of regularity." The lower court stated:

> During all of the periods of time other than when he was working this mail run between Landover and Oklahoma City, he passed through Maryland on a regular basis, but it was en route from one place to another and it just happened to be that his assignment called for him to get from point A to point B with Maryland being in between. It had nothing to do with an assignment of work in Maryland or there was no regularity associated with that.
>
> During the period of time when he was on the Landover to Oklahoma City run, that is certainly closer to a regular schedule but that it seems to me also was, as I understand it from the testimony before the Commission, during those periods of time he basically was living in his truck, going from Landover to Oklahoma City, back again. There was no regularity with respect to those trips. And again, that's a matter that seems to me to be as much a chance as it is anything else.
>
> It seems to me based on the *Dixon* case and the factors of *Pohopek*, which seems to me the Court of Special Appeals found to be most persuasive that Pohopek was covered[,] are absent in this case.

In *Dixon*, this Court held that regular employment "implies a uniform course of conduct." *Dixon*, 107 Md.App. at 549, 668 A.2d 1009. Applying the rule to the facts in that case, the *Dixon* Court held that a construction worker, who commuted from Maryland to work in Virginia, was not regularly employed in Maryland. *Id.* The construction worker was employed by a Virginia corporation, was supervised, and received his pay from the company headquarters in Virginia. Although the construction worker testified that he worked in Maryland two to three months a year, his employment in Virginia the remaining nine to ten months of the year convinced the *Dixon* Court that any employment in Maryland was not regular but was "more a matter of chance." *Id.* As a result, the *Dixon* Court concluded that the construction worker was not a

"covered employee" under L.E. § 9–203(a)(2). *Id.* at 550, 668 A.2d 1009.

This Court determined, however, in *Pohopek I* that a tractor-trailer driver, who drove an employer's truck throughout the east coast but returned home to Maryland every weekend, was regularly employed in Maryland and thus was a "covered employee" under L.E. § 9–203(a)(2). *Pohopek I,* 140 Md.App. at 243, 780 A.2d 383. Applying the rule set forth in *Dixon,* we held:

> This Court has stated that "[t]he word 'regular' implies a uniform course of conduct." Because of Pohopek's weekend duties and responsibilities, he essentially worked a seven-day work week, spending every Friday through Monday in Maryland, and on the road every Tuesday through Thursday, as well as parts of Monday and Friday. There is "no particular formula for establishing 'regular' employment," and we must evaluate each set of circumstances on a case-by-case basis. Here, the consistency of Pohopek's schedule and the employment responsibilities he carried out within the State persuade us to find regularity in Pohopek's Maryland employment. Pohopek was not commuting to work in another state on a daily or regular basis, but, instead, he was based out of Maryland and traveled regularly, albeit extensively, as part of his routine employment.

*Id.* at 240–41, 780 A.2d 383 (citations omitted).

The Court of Appeals affirmed our decision, agreeing that the tractor-trailer driver was regularly employed in Maryland. *Pohopek II,* 375 Md. at 592, 826 A.2d 474. The Court cited similar reasons, explaining that the driver's regular presence and work in Maryland on the weekends, which included storing, safekeeping, and maintaining the employer's tractor-trailer, qualified as regular employment in Maryland. *Id.* According to the Court, such employment was tantamount to "a uniform course of conduct." *Id.* (quoting *Pohopek I,* 140 Md.App. at 240–41, 780 A.2d 383; *Dixon,* 107 Md.App. at 549, 668 A.2d 1009).

The Court of Appeals further observed that, due to the transitory nature of trucking, employment can be rooted in a local state even though the employee spends more time in foreign states. *Id.* at 593, 668 A.2d 1009. The place where the employment was contracted, the Court explained, is not the dispositive factor. In explicating the dispositive factor in a determination of whether an employee is covered, the Court said:

That factor is whether the employment in Maryland is regular when compared to the employment outside Maryland. That comparison, when the employment itself is transitory, is between the State where the employment has been found to be regular and each of the other locations to which the employment has a relationship. Thus, it is not the whole of the employment outside the State that is considered, it is only that in some other State that surpasses the "casual." As Professor Larson points out, "a status rooted in the local state ... is not lost merely on the strength of the relative amount of time spent in the local state as against foreign states. An employee loses this status only when his or her regular employment becomes centralized and fixed so clearly in another state that any return to the original state would itself be only casual, incidental and temporary by comparison." 9 A. Larson & L. Larson, *Workers' Compensation Law* § 143.04[2][c] (2003).

*Id.* at 594–95, 668 A.2d 1009; L.E. § 9–203(a)(2).

As noted earlier, there is no formula for determining regular employment, but "we must evaluate each set of circumstances on a case-by-case basis." *Pohopek I,* 140 Md.App. at 241, 780 A.2d 383. In the case *sub judice,* appellant drove a tractor-trailer throughout most of the United States, making deliveries to thirty-seven states. Appellant's driving assignments appeared to be random, with no real consistency in his driving schedule or the routes he was allocated. The only assignment that can be categorized as regular was the Landover, Maryland/Oklahoma City route. That route, however, was only assigned approximately nine times during the entire

five months of appellant's employment. Notwithstanding the Landover route, appellant traveled many less miles in Maryland than he traveled in several other individual states. Moreover, the driving assignments were sent to appellant via satellite radio, which enabled appellant to receive his next assignment anywhere in the country. Therefore, each trip that appellant made did not necessarily begin and end in Maryland, as appellant argues, because he did not need to return to Maryland in order to receive the next assignment.

Appellant was also not based out of Maryland and had no consistency in his work schedule. Unlike the driver in *Pohopek*, appellant did not return home each weekend. In his five months of employment appellant rarely returned home. Between October 15, 2000 and January 10, 2001, appellant testified that he only visited home once. The record is unclear on the number of times he visited his residence in August and September 2000, but the dates on his Trip Mileage and Route Sheets indicate that appellant rarely visited his residence in those months. Instead of returning home, appellant continued driving around the country, with no break between each successive assignment. In order to accomplish this driving arrangement, appellant slept and lived in his truck during most of the time of his employment. Even during the Landover/Oklahoma City route, in which appellant was required to spend overnights in Maryland, he slept in his truck.

Although appellant had duties similar to the duties of the driver in *Pohopek*, appellant's duties were not regularly performed in Maryland. A decisive factor in *Pohopek* was that the driver spent a considerable amount of time in Maryland safeguarding the employer's truck and preparing for the next week's deliveries. As the lower court expressed, those factors "are absent in this case" because appellant did not consistently perform such duties in Maryland. For this reason, we hold that the facts of the instant case more closely resemble the situation observed in *Dixon*. Appellant's employment in Maryland is "more a matter of chance than of regularity." *Dixon*, 107 Md.App. at 549, 668 A.2d 1009. Whether appellant would drive or spend time in Maryland was determined by the

random assignment delegated by appellee and not by a regular schedule allowing appellant to return to Maryland each weekend.

In light of the above factors and the holding in *Dixon,* we conclude that appellant's employment in Maryland was not regular and thus he was not a "covered employee" under L.E. § 9–203. The circuit court, therefore, did not err in granting summary judgment in favor of appellee.

**JUDGMENT OF THE CIRCUIT COURT FOR WICOMICO COUNTY AFFIRMED.**

**COSTS TO BE PAID BY APPELLANT.**