883 A.2d 211

Carlos HODGSON

v.

FLIPPO CONSTRUCTION COMPANY, INC., et al.

No. 861, Sept. Term, 2004.

Court of Special Appeals of Maryland.

Sept. 15, 2005.

Howard B. Ackerman, Washington, DC, for appellant.

James J. Gerbes, Hunt Valley, for appellee.

Panel EYLER, JAMES R., KRAUSER and BARBERA, JJ.

KRAUSER, J.

The issue before us is whether the Maryland Workers' Compensation Commission had jurisdiction over a workers' compensation claim filed by Carlos Hodgson, a Maryland resident, against Flippo Construction Company, Inc., a Mary-

land-based company, for an injury that he sustained at one of Flippo's District of Columbia job sites.[1] Concluding that it did not, the Maryland Commission dismissed Hodgson's claim. When that decision was affirmed by the Circuit Court for Prince George's County, Hodgson noted this appeal, requesting that we resolve this jurisdictional issue in his favor. We cannot for the reasons set forth below.

## Background

The facts are not in dispute. Appellee, Flippo Construction Company, Inc., hired Hodgson, a carpenter by trade, in Maryland, where it is headquartered and where Hodgson resides. For the first three years of his employment, from November 1995 through 1998, appellant worked almost exclusively at job sites in Maryland. That changed in 1999.

From 1999 until the date of his accident, three years later, in 2001, appellant was principally assigned to District of Columbia job sites. While employed chiefly in the District of Columbia, appellant continued to perform work in Maryland and Virginia. Appellant also traveled to Maryland two to three times a week, when requested to do so by his employer, to purchase supplies from Maryland vendors, after which he either delivered them to his D.C. job site the same day or kept them in his truck overnight at his Maryland apartment and delivered them the next morning. Appellant testified that he also periodically drove to Flippo's headquarters in Forestville, Maryland, "to deliver checks and pick up some payrolls or whatever they sent [him] for." And he attended meetings and classes at Flippo's Maryland headquarters approximately three times a year.

On December 7, 2001, appellant was injured while working at a company job site in the District of Columbia. He filed a

---

1. Although neither side addresses the relative advantages of filing a claim in Maryland rather than in the District of Columbia, we assume that Mr. Hodgson's interest in the resolution of this issue is more than academic, and that the benefits he would receive from the Maryland Commission are potentially greater than those he would otherwise receive from the D.C. Commission.

claim for his injuries with both the Maryland Workers' Compensation Commission and the District of Columbia Workers' Compensation Commission.[2] Seeking dismissal of the Maryland claim, Flippo argued that the Maryland Commission did not have jurisdiction over appellant's claim because his injury occurred in the District of Columbia where he had been working for most of the year preceding his injury.

Flippo's employment records indicated that, during the year before his injury, appellant spent approximately 1,195.5 hours or 60.29% of his total "fixed job site" time at D.C. job sites; 411.5 hours or approximately 20.75% of his total "fixed job site" time at Maryland job sites; and 215 hours, approximately 10.84% of his total "fixed job site" time at Virginia job sites. An additional 161 hours or 8.12% of his working time was attributed to "miscellaneous" jobs he performed in Maryland. Those jobs, appellant testified, included "remodel[ing] the office for the company" and "putting machine[s] together for construction."

After a hearing, the Maryland Workers' Compensation Commission concluded that it did not have jurisdiction over appellant's claim and dismissed it. The Circuit Court for Prince George's County agreed and affirmed that decision.

### Discussion

■ Appellant contends that the circuit court erred in concluding that he was not a "covered employee," under Md.Code (1991, 1999 Repl.Vol.), § 9–203(a) of the Labor and Employment Article ("L.E."), and, as a consequence, that the Commission did not have subject matter jurisdiction over his workers' compensation claim. That, of course, presents us with a question of statutory interpretation, requiring that we determine the scope of that section of the Workers' Compensation Act. L.E. §§ 9–101 to 9–1201.

---

2. The record does not indicate when the District of Columbia claim was filed or its current status.

■ Before undertaking that task, we note that the Workers' Compensation Act is remedial in nature and we are therefore required to "liberally construe[ ]" its provisions "in favor of injured employees" so as "to effectuate its benevolent purposes." *Subsequent Injury Fund v. Slater,* 27 Md.App. 295, 300, 340 A.2d 405 (1975). Yet, we may not, in interpreting it, overstep its legislatively-drawn boundaries and grant coverage beyond that which is authorized by the plain language of its provisions. *Barnes v. Children's Hospital,* 109 Md.App. 543, 554, 675 A.2d 558 (1996). And that, as we shall see, is precisely what appellant entreats us to do and why we must reject his entreaty.

■ Labor and Employment § 9–203 which, in conjunction with L.E. § 9–202, largely defines the Act's coverage, plainly indicates, by its title and substance, that, in Maryland, the "site of . . . employment" is the touchstone for determining whether an employee is covered by the Act. *McElroy Truck Lines, Inc. v. Pohopek,* 375 Md. 574, 581, 826 A.2d 474 (2003). That section states:

L.E. § 9–203. Site of Employment

(a) Except as otherwise expressly provided, an individual is a covered employee while working for the employer of the individual:

(1) in this State;

(2) outside of this State on a casual, incidental, or occasional basis if the employer regularly employs the individual within this State; or

(3) wholly outside the United States under a contract of employment made in this State for the work to be done wholly outside of the United States.

(b)(1) An individual is not a covered employee while working in this State for an employer only intermittently or temporarily if:

(i) the individual and employer make a contract of hire in another state;

(ii) neither the individual nor the employer is a resident of this State;

(iii) the employer has provided workers' compensation insurance coverage under a workers' compensation or similar law of another state to cover the individual while working in this State;

(iv) the other state recognizes the extraterritorial provisions of this title; and

(v) the other state similarly exempts covered employees and their employers from its law.

(2) If an individual is exempted from coverage under this subsection and injured in this State while working for the employer of the individual, the sole remedy of the individual is the workers' compensation or similar law of the state on which the exemption is based.

(3) A certificate from an authorized officer of the workers' compensation commission or similar unit of another state certifying that the employer is insured in that state and has provided extraterritorial insurance coverage for the employees of the employer while working within this State is prima facie evidence that the employer carries that compensation insurance.

(c) Except as otherwise expressly provided, an individual who is employed wholly outside of this State is not a covered employee.

In brief, section (a) of L.E. § 9–203 defines who is covered by the Act and section (b) of L.E. § 9–203 defines who is not. Therefore, to be eligible for Maryland workers' compensation benefits, appellant must be a "covered employee" under one of the three subsections of L.E. § 9–203(a). While acknowledging that he was neither working for Flippo exclusively in Maryland, which would rendered him a "covered employee" under L.E. § 9–203(a)(1), nor working "wholly outside of the United States under a contract of employment made in [Maryland]," which would have granted him "covered employee" status under L.E. § 9–203(a)(3), appellant insists that he was a covered employee under § 9–203(a)(2). That subsection provides coverage for employees " 'regularly' employed in Maryland while working outside of Maryland on a 'casual,

incidental, or occasional basis.' " *Fitzgerald v. R & R Trucking, Inc.,* 154 Md.App. 86, 92, 838 A.2d 397 (2003).

■ In determining whether an employee is "regularly employed" in Maryland for § 9–203(a)(2) purposes, factors such as where the claimant was hired, *Pohopek,* 375 Md. at 594, 826 A.2d 474; whether the employment "arrangement contemplat[ed] a regular presence" in the particular jurisdiction, *id.* at 592, 826 A.2d 474; the "nature of the employer's work," *id.* at 586, 826 A.2d 474; the "scope and purpose of the hiring," *id.* at 587, 826 A.2d 474; the "duration of the employment," *id.;* the "consistency" of the claimant's work in the particular jurisdiction, *Fitzgerald,* 154 Md.App. at 96, 838 A.2d 397; and representations made by the employer as to where the claimant would be working, *L.R. Willson & Sons v. Garrett,* 76 Md.App. 120, 127, 543 A.2d 875 (1988), may be relevant. Two are not. Neither the claimant's residence, *Dixon v. Able Equipment Company, Inc.,* 107 Md.App. 541, 548, 668 A.2d 1009 (1995), nor the site of the accident, *see Pohopek,* 375 Md. 574, 826 A.2d 474; *Fitzgerald,* 154 Md.App. 86, 838 A.2d 397, is ipso facto relevant to that decision. With that in mind, we turn to the question of what authority does appellant cite, beyond the broad and inclusive language of the statute itself, in support of his claim.

The answer is one case. He relies exclusively on *Pohopek,* 375 Md. 574, 826 A.2d 474. And so does Flippo. Given that *Pohopek* presents one of the most recent and comprehensive discussions of the scope of § 9–203(a) in multi-jurisdictional cases and that its language, when selectively culled, can be placed in the service of either party's stance, their common choice of authority for their conflicting positions is understandable.

The *Pohopek* case received its first appellate review in *Pohopek v. McElroy Truck Lines, Inc.,* 140 Md.App. 235, 780 A.2d 383 (2001). The issue before this Court was whether Pohopek, "a Maryland resident, employed as a truck driver by a trucking company based out of state, who was required to keep and maintain the company owned tractor-trailer truck in

Maryland on weekends, but whose employment involved traveling, during the week, to various states along the Eastern seaboard, including sometimes Maryland, for regular pickups and deliveries, [was] a 'covered employee' " under § 9–203.[3] *Pohopek,* 375 Md. at 577, 826 A.2d 474. We found that he was "regularly employed" in Maryland, explaining:

> This Court has stated that "[t]he word 'regular' implies a uniform course of conduct." *Dixon v. Able Equipment Co., Inc.,* 107 Md.App. 541, 547, 668 A.2d 1009 (1995). Because of Pohopek's weekend duties and responsibilities, he essentially worked a seven-day work week, spending every Friday through Monday in Maryland, and on the road every Tuesday through Thursday, as well as parts of Monday and Friday. There is "no particular formula for establishing 'regular' employment," *id.,* and we must evaluate each set of circumstances on a case-by-case basis. Here, the consistency of Pohopek's schedule and the employment responsibilities he carried out within the State persuade us to find regularity in Pohopek's Maryland employment. Pohopek was not commuting to work in another state on a daily or regular basis, but, instead, he was based out of Maryland and traveled regularly, albeit extensively, as part of his routine employment.

*Pohopek,* 140 Md.App. at 240–41, 780 A.2d 383.

But we also found that he was as "regularly employed outside of Maryland as he was within Maryland." *Id.* at 241, 780 A.2d 383. To resolve this dilemma, we cited language from our decision in *Dixon,* 107 Md.App. 541, 668 A.2d 1009, declaring that "if an employee works outside the State but does not work wholly outside the State, then the employee's work outside the state is said to be casual." *Id.* at 242, 668 A.2d 1009. "Our finding that Pohopek regularly works outside the State," we reasoned, "is inherently a finding that Pohopek does not work wholly outside the State and, therefore ... Pohopek's work outside the State must be interpreted as

---

**3.** We use the Court of Appeals' description of the issue because of the admirable succinctness with which it is expressed.

casual." *Id.* In sum, we avowed, "Until there is a finding of casual employment within the State, the only determinative status of work outside of the State is either 'whole' or 'casual.' " *Id.* at 242–43, 668 A.2d 1009.

When this matter reached the Court of Appeals, it agreed with the conclusion of this Court that Pohopek was "regularly employed" in Maryland, commenting:

> The respondent [Pohopek] begins, and ends, his work week in Maryland and the [employer's] tractor-trailer is kept in Maryland . . . the respondent is charged with its safekeeping and the safekeeping of any cargo that it might contain. Moreover, the respondent is responsible for the maintenance of the tractor-trailer. We believe these facts and circumstances suffice to establish that the respondent's employment in Maryland, rather than being "casual," was "regular." This is consistent with the holding of the Court of Special Appeals, which, as we have seen, relying on the definition of "regular" enunciated in *Dixon,* i.e. "A uniform course of conduct," was persuaded by the consistency of the respondent's schedule and job responsibilities.

*Pohopek,* 375 Md. at 592, 826 A.2d 474 (quoting *Pohopek,* 140 Md.App. at 240–41, 780 A.2d 383; *Dixon,* 107 Md.App. at 549, 668 A.2d 1009).

Had it chosen to do so, the Court of Appeals could have stopped there and affirmed the decision of this Court, based upon the rationale of this Court, that only employment "wholly" outside the State would preclude a compensation award to an employee regularly employed in the State. But the Court did not. Choosing instead to take another path to the same destination, it introduced a comparative test for trucking and certain other "transitory" types of employment. Stressing the unique nature of trucking, which, like " 'flying, selling, or construction work' " is transient in nature, *Pohopek,* 375 Md. at 593, 826 A.2d 474, it quoted with approval the following language from 9 A. Larson & L. Larson, *Workers' Compensation Law* § 143.04[2][c] (2003):

"In some kinds of employment, like trucking, flying, selling, or construction work, the employee may be constantly coming and going without spending any longer sustained periods in the local state than anywhere else; but a status rooted in the local state by the original creation of the employment relation there, is not lost merely on the strength of the relative amount of time spent in the local state as against foreign states. An employee loses this status only when his or her regular employment becomes centralized and fixed so clearly in another state that any return to the original state would itself be only casual, incidental and temporary by comparison. This transference will never happen as long as the employee's presence in any state, even including the original state, is by the nature of the employment brief and transitory."

*Id.* at 593–94, 826 A.2d 474.

It then noted that, in Maryland, the "dispositive factor" for determining "the situs of employment relation" for jurisdictional purposes is not "where the employment was contracted," as Larson and several other jurisdictions would have it, *id.* at 594, 826 A.2d 474, but "whether the employment in Maryland is regular, compared to the employment outside Maryland." *Id.* "That comparison, when the employment itself is transitory, is between where the employment has been found to be regular," declared the Court, "and each of the other locations to which the employment has a relationship." *Id.* "[I]t is not," the Court stressed, "the whole of the employment outside the State that is considered," but "only that in some other State that surpasses 'casual.' " *Id.* Quoting Professor Larson for the last time, it repeated his admonition that " 'a status rooted in the local state' " is lost only when an employee's " 'regular employment becomes centralized and fixed so clearly in another state that any return to the original state would itself be casual, incidental, and temporary by comparison.' " *Id.* at 594–95, 826 A.2d 474. That did not occur, the Court found, in *Pohopek.* *Id.* at 595, 826 A.2d 474.

While Pohopek's "employment activity outside of the State dwarfs the amount in State," his presence in none of the

locations outside of the State, the Court observed, "is substantially greater than in Maryland." *Id.* at 594, 826 A.2d 474. Having thus narrowed the focus of comparison, the Court concluded that, in contrast to the work he performed in Maryland, Pohopek's "employment activity" in the other states, "in which he ma[de] deliveries and pick-ups," was " 'casual, occasional or incidental.' " *Id.* at 595, 826 A.2d 474. And that unlocked the door to coverage under L.E. § 9–203(a)(2).

As noted earlier, construction work, like trucking, is a transitory type of employment; thus Hodgson, like Pohopek, belonged to "a unique class of employee whose activity, by its very nature, is transient." Larson, *supra* § 143.04[2][c]. Consequently, we must determine whether Hodgson's employment was, as he contends, initially "rooted" in Maryland and, if so, whether his regular employment thereafter became "centralized and fixed so clearly" in the District of Columbia that "any return to [Maryland] would itself be only casual, incidental, and temporary by comparison." *Id.*

Unfortunately, there is no formula or algorithm upon which we can rely in making that determination. Each case must be decided upon the facts it presents. Under the facts of this case, we are persuaded that Hodgson's employment, though initially rooted in Maryland, became "fixed and centralized" in the District of Columbia over the three-year-period leading up to his accident. Indeed, unlike in *Pohopek*, where the claimant's presence in none of the other jurisdictions was "substantially greater than in Maryland," *Pohopek*, 375 Md. at 594, 826 A.2d 474, appellant's presence was "substantially greater" in the District of Columbia for the last three years of his employment than it was in Maryland.

Appellant was hired in Maryland by a Maryland-based company. And, for the first three years of his employment with Flippo, he worked almost exclusively in Maryland. His employment was, to be sure, initially "rooted" in Maryland, as he maintains. But that came to an end in 1999, when he was reassigned to work chiefly at D.C. job sites. For the next

three years, leading up to his injury at the end of 2001, he worked principally in the District of Columbia. In his brief, he acknowledges that in 1999 he was "primarily" assigned to D.C. job sites, and that in 2000 his job sites were "almost exclusively in Washington, D.C."[4]

In 2001, the year preceding his injury, his employment records show, and the circuit court found, that he worked 60.29% of his "fixed job site" time in D.C., while he only spent 20.75% of his "fixed job site" time in Maryland. Moreover, his trips to Maryland to pick up supplies and pay roll documents for his D.C. job sites and his attendance at classes and meetings held at Flippo's Maryland headquarters, were merely "incidental" or "secondary" to his employment in D.C. *See Webster's New World Dictionary* (2d College ed.1984)(defining "incidental" as "happening as a result of or in connection with something more important"; "secondary or minor, but usually associated"). Thus, in comparison to his work in D.C., appellant's work in Maryland was "casual, incidental, or occasional." L.E. § 9–203(a)(2). And, finally, appellant does not contend, nor is there any evidence that he will be returning to work primarily in Maryland anytime in the future. Hence, the Maryland Workers' Compensation Commission did not err in finding that appellant was not a "covered employee" under L.E. § 9–203(a)(2).

**JUDGMENT AFFIRMED.**

**COSTS TO BE PAID BY APPELLANT.**

---

**4.** Neither side presented any detailed information as to the precise amount of time appellant worked in D.C. compared to Maryland and other jurisdictions during 1999 and 2000.