51 A.3d 586

PRO–FOOTBALL, INC. t/a the Washington Redskins, et al.

v.

Darnerien McCANTS.

No. 116, Sept. Term, 2011.

Court of Appeals of Maryland.

Aug. 23, 2012.

David O. Godwin, Jr. (Ashlee S. Turmelle of Godwin, Erlandson, MacLaughlin, Vernon & Daney, LLC, Ellicott City, MD), on brief, for petitioners.

Benjamin T. Boscolo (Gerald Herz and Kevin H. Stillman of Chasenboscolo Injury Lawyers, Greenbelt, MD), on brief, for respondent.

Argued before BELL, C.J., HARRELL, BATTAGLIA, GREENE, ADKINS, BARBERA, and McDONALD, JJ.

BARBERA, J.

Darnerien McCants, Respondent, played wide receiver for the Washington Redskins professional football team between 2002 and 2004. Respondent sustained six injuries while playing for the Redskins on four separate occasions during the 2003 and 2004 National Football League (NFL) season. Consequently, Respondent filed with the Maryland Workers Compensation Commission (the Commission) six separate claims against his employer, Petitioner, Pro–Football, Inc., d/b/a The Washington Redskins, to recover compensation for those injuries. The Commission denied five of Respondent's claims on the ground that he was not a "covered employee" under § 9–203 of the Maryland Code (1999, 2008 Repl.Vol.), Labor and Employment Article,[1] because he was working for the Reds-

---

**1.** All statutory references hereinafter are to the Labor and Employment Article, unless otherwise specifically noted.

Section 9–203 provides:

(a) *In general.*—Except as otherwise expressly provided, an individual is a covered employee while working for the employer of the individual:

kins outside of the State when he sustained the injuries underlying the claims. Respondent petitioned for judicial review of the Commission's decision to the Circuit Court for Prince George's County, which affirmed. The Court of Special Appeals reversed the decision in an unreported opinion, holding that Respondent was a "covered employee" within the meaning of the law. Petitioner thereafter filed a petition for a writ of certiorari with this Court asking us to determine whether a football player employed by the Washington Redskins is a "covered employee," and therefore entitled to avail himself of Maryland's workers' compensation laws, when in-

---

(1) in this State;

(2) outside of this State on a casual, incidental, or occasional basis if the employer regularly employs the individual within this State; or

(3) wholly outside the United States under a contract of employment made in this State for the work to be done wholly outside of the United States.

(b) *Incidental service in State.*—(1) An individual is not a covered employee while working in this State for an employer only intermittently or temporarily if:

(i) the individual and employer make a contract of hire in another state;

(ii) neither the individual nor the employer is a resident of this State;

(iii) the employer has provided workers' compensation insurance coverage under a workers' compensation or similar law of another state to cover the individual while working in this State;

(iv) the other state recognizes the extraterritorial provisions of this title; and

(v) the other state similarly exempts covered employees and their employers from its law.

(2) If an individual is exempted from coverage under this subsection and injured in this State while working for the employer of the individual, the sole remedy of the individual is the workers' compensation or similar law of the state on which the exemption is based.

(3) A certificate from an authorized officer of the workers' compensation commission or similar unit of another state certifying that the employer is insured in that state and has provided extraterritorial insurance coverage for the employees of the employer while working within this State is prima facie evidence that the employer carries that compensation insurance.

(c) *Outside State.*—Except as otherwise expressly provided, an individual who is employed wholly outside of this State is not a covered employee.

jured while practicing and playing football outside of Maryland. We answer that question in the affirmative.

## I.

Petitioner is a Maryland corporation that operates the Washington Redskins football team, which plays in the National Football League. The team name is a bit of a misnomer, at least for present purposes, as the Redskins maintains a minimal presence in Washington D.C.[2] Instead, the Redskins plays half of its yearly, twenty-game football schedule (two preseason games and eight regular-season games) at FedEx Field in Landover, Maryland. The remaining games are played in stadiums at different locations around the country. The Redskins maintains its corporate presence in offices in Ashburn, Virginia, and prepares at the team's practice facility, also located in Ashburn.

In 2001, the Redskins drafted Respondent in the NFL's college draft to play for the team. Shortly after being drafted, Respondent signed a standard NFL player contract. The contract stipulated, among other things, that Respondent was being employed as a "skilled football player." As part of that employment, Respondent agreed to "report promptly for and participate fully in [the team's] official mandatory minicamp(s), official preseason training camp, all [team] meetings and practice sessions." The contract also required Respondent to report for "all pre-season, regular season, and post-season football games scheduled for or by [the team]."

From 2002 to 2004 Respondent played in 34 football games as a member of the Redskins team. In 2002, he played eight of those games at FedEx Field in Maryland and six at stadiums in other states. In 2003, he played seven games in Maryland and eight games in other states. In 2004, he played three games in Maryland and two games in other states. In total, Respondent played eighteen games over a span of three

---

2. We do not overlook the Redskins' significant fan base in Washington D.C.

football seasons in Maryland and the remaining sixteen games in other states.

Respondent has alleged that, during the 2003 and 2004 football season, he sustained multiple accidental injuries while engaged in either team practices or games for the Redskins.[3] On October 5, 2003, Respondent injured his neck after making a catch during a game in Philadelphia, Pennsylvania. On October 20, 2003, he injured his right ankle, left shoulder, and right shoulder after being tackled in a game in Buffalo, New York. On December 27, 2003, he injured his left shoulder while playing in a game at FedEx Field. And on August 17, 2004, Respondent injured his right knee and right ankle during a practice session in Ashburn, Virginia.

On April 18, 2007, Respondent filed with the Commission a separate claim for each of those six injuries. He filed claim B678845 for the left shoulder injury sustained at FedEx Field; B678846 for the right knee and right ankle injuries sustained at the Redskins' practice facility in Ashburn, Virginia; B678848 for the neck injury sustained in the game in Philadelphia; B678849 for the left shoulder injury sustained at the game in Buffalo; B678850 for the right ankle injury sustained in the game in Buffalo; and B678851 for the right shoulder injury sustained in the game in Buffalo.

All six claims came on for a hearing before the Commission on July 16, 2008. At the hearing, the Redskins raised four issues in connection with Respondent's claims: 1) Respondent's injuries were not *accidental* injuries that arose out of his employment with the team; 2) Respondent's subsequent disability was not a result of the injuries; 3) Respondent's claims were barred by the applicable statute of limitations; and 4) the Commission did not possess jurisdiction over the five claims that involved out-of-state injuries. After hearing argument on the matter, the Commission determined that it did not possess jurisdiction to hear any of the five claims that

---

**3.** For purposes of this opinion only, we shall hereinafter assume that Respondent in fact sustained those injuries and did so during the course of his employment with the Redskins.

were based on out-of-state injuries—B678846, B678848, B678849, B678850, and B678851—seemingly because, in relation to those injuries, Respondent was not a "covered employee" within the meaning of § 9–203(a). The Commission therefore dismissed, for lack of jurisdiction, all the claims except B678845.[4]

Respondent sought judicial review of the Commission's decision, in the Circuit Court for Prince George's County.[5] At a one-day trial on the matter on June 16, 2010, the parties disputed whether Respondent was a "covered employee", as that term is used in § 9–203(a), when he was injured while playing football games in New York, Pennsylvania, and Virginia, respectively. Section 9–203(a) provides three methods by which an individual qualifies as a "covered employee": 1) when

---

**4.** Because the injury upon which B678845 was predicated occurred at FedEx Field in Maryland, the Commission ruled in favor of Respondent on the merits of his claim for compensation, necessarily finding that he was a "covered employee" for the purposes of that claim. After a trial before a jury, the Circuit Court affirmed that decision. Petitioner has not appealed the Circuit Court's judgment affirming the Commission's decision.

**5.** Respondent sought review of the Commission's decision dismissing B678846, B678848, B678849, B678850, and B678851 for lack of jurisdiction. Separately, the Redskins sought review of the Commission's decision awarding Respondent compensation in B678845, challenging the Commission's factual determination that Respondent did suffer an accidental injury. In seeking such review of the Commission's factual finding, the Redskins requested a jury trial for determination of certain questions of fact in the case. See § 9–745(d) (providing that, as part of a Circuit Court's conduct of appellate proceedings in review of a Commission decision, "[o]n a motion of any party filed with the clerk of the court in accordance with the practice in civil cases, the court shall submit to a jury any question of fact involved in the case"). The case proceeded as a single trial, yet remained somewhat bifurcated. The Redskins first presented to a jury its case relating to B678845. After the jury returned a verdict in favor of Respondent, the proceeding went forward as a bench trial, at which the Redskins and Respondent entered no new evidence into the record and simply made legal arguments relating to B678846, B678848, B678849, B678850, and B678851.

The Redskins has not appealed the jury verdict in Respondent's favor on B678845. It, and its attendant jury proceeding, are therefore not part of our review in the present case.

working for an employer "in this State," § 9–203(a)(1); 2) when working for an employer "outside of this State on a casual, incidental, or occasional basis if the employer regularly employs the individual within this State," § 9–203(a)(2); or, 3) when working for an employer "wholly outside the United States under a contract of employment made in this State for the work to be done wholly outside of the United States," § 9–203(a)(3).

The parties argued before the Circuit Court whether Respondent came within the purview of § 9–203(a)(2) when he practiced and played in football games outside of Maryland; that is, whether his playing in games at FedEx Field constituted regular employment in the State and his practice time in Virginia and participation in games outside of Maryland was work "outside of this State on a casual, incidental, or occasional basis." Respondent took the position that he was employed by the Redskins "to play in NFL games," the bulk of which took place in Landover, Maryland. According to Respondent, his time in Virginia spent practicing football was merely "preparatory to performing in those NFL games" and therefore "incidental" to Respondent's work. Moreover, according to Respondent, because the Redskins seasonally play in ten NFL games in Maryland and one NFL game in each of ten other jurisdictions, any NFL game he played outside of Maryland was merely occasional within the meaning of § 9–203(a)(2). Respondent therefore asserted that he was a "covered employee" because he was regularly employed in Maryland and injured while working "outside of this State on a casual, incidental, or occasional basis."

The Redskins countered, arguing that the bulk of Respondent's job took place in Virginia.[6] The Redskins specifically

---

6. The Redskins also argued before the Commission and the Circuit Court that a forum selection clause included in Respondent's contract mandated that Virginia law govern the contract, and therefore Maryland's workers' compensation provisions could not be made to apply to Respondent's employment. The Redskins, however, has not pursued that argument in this Court, choosing only to present to us the single

asserted that Respondent's employment with the team consisted primarily of practice and preparatory activities, including weight-training and "viewing of films," all of which took place in Virginia. At most, according to the Redskins, Respondent's connection to Maryland consisted of "riding on the bus and appearing at FedEx Field possibly eight times per year." Consequently, because of its sheer bulk, Respondent's time in Virginia could not be characterized as "incidental" under § 9–203(a)(2) and Respondent accordingly did not qualify as a "covered employee."

The Circuit Court agreed with the Redskins. The court found that Respondent was not regularly employed in Maryland because the scope of his employment required his presence in Maryland "eight times a year" and in Virginia "several hundred days a year." Instead, because of the "substantial" time Respondent spent in Virginia, the court concluded that Virginia was the place of Respondent's regular employment and Respondent's presence in Maryland was merely incidental to that employment. Consequently, the Circuit Court affirmed the decision of the Commission that there existed no jurisdiction to hear Respondent's claim.

Respondent noted an appeal to the Court of Special Appeals. In an unreported opinion, that Court reversed the Commission's decision, holding that Respondent was a "covered employee" under § 9–203. The Court of Special Appeals noted that the amount of time Respondent spent in Virginia did not determine the issue because that time was spent practicing for football games and, according to the Court, "practicing is incidental to the main purpose of [the] employment: to play in football games." The Court therefore held that Respondent "was regularly employed in Maryland because he had an ongoing relationship with his employer, a Maryland corporation, for the purpose of playing in football games, more of which took place in Maryland than in any other state."

---

question of whether Respondent is a "covered employee" under § 9–203.

The Redskins petitioned this Court for a writ of certiorari, which we granted, *Pro–Football, Inc. v. McCants,* 424 Md. 628, 37 A.3d 317 (2012), to address the following issue:

Whether the Maryland Workers' Compensation Commission has jurisdiction over injuries sustained by a professional football player when playing a game outside of the State of Maryland.

## II.

"When an individual seeks to secure workers' compensation coverage for an injury sustained on the job, the first question to be resolved is whether he or she is a 'covered employee.'" *W.M. Schlosser Co. v. Uninsured Employers' Fund,* 414 Md. 195, 206, 994 A.2d 956, 963 (2010). This is because the Commission has jurisdiction to hear only those claims brought by a "covered employee" as that term is employed in the Workers' Compensation Act. *See generally* §§ 9–709 through 9–711. Whether an individual is a "covered employee" depends on whether the individual is an employee of the employer, § 9–202(a); and on the site of the employment, *see* § 9–203; *see also McElroy Truck Lines, Inc. v. Pohopek,* 375 Md. 574, 581, 826 A.2d 474, 478 (2003). As to the site of employment, "an individual who is employed wholly outside of this State is not a covered employee," § 9–203(c), and an individual whose work takes place entirely "in this State" is a covered employee, § 9–203(a)(1).

The question is a closer one when an individual's employment necessitates work both inside and outside of Maryland. Under § 9–203(a)(2), an individual working across state lines may qualify as a covered employee if the individual works "regularly" in Maryland and on a "casual, incidental, or occasional basis" outside of the state. An individual who only works "intermittently or temporarily" in Maryland is not a covered employee if five other conditions, not pertinent here, are met. *See* § 9–203(b)(i)–(v).

The parties agree that Respondent is an employee of the Redskins. The parties further agree that Respondent works

neither wholly inside nor wholly outside of Maryland. The parties' dispute centers on whether Respondent's interstate employment qualifies him as a "covered employee" under § 9–203(a)(2). The parties specifically dispute whether Respondent's work in Maryland, *i.e.* participating in ten football games at FedEx Field in Landover, constitutes regular employment in the state; and whether the substantial time Respondent spends in Virginia practicing and preparing for football games may be characterized as "casual, incidental, or occasional" under § 9–203(a)(2).

The Redskins argues that Respondent was not regularly employed in Maryland and his practice time in Virginia was not incidental to his employment. Central to this two-faceted argument is that Respondent spent most of his time as an employee of the Redskins practicing and preparing in Virginia for football games. Because this preparation constitutes "the bulk" of Respondent's time engaged in employment duties, the Redskins asserts that the location of those preparatory duties is the place where Respondent was regularly employed— Virginia. The Redskins further asserts that, because Respondent's employment contract requires him to engage in a "constant and routine performance of essential employment functions" (*i.e.* practice) in Virginia, Respondent's time in Virginia cannot be characterized as casual, incidental, or occasional.

Respondent disagrees, arguing that the essence of his job is to "catch a football" in football games. The majority of Redskins football games taking place in Maryland, Respondent asserts that the majority of his work takes place in Maryland, and therefore he is regularly employed in Maryland. Respondent further asserts that the "sole reason for practice is to play in regular season games." In support of this assertion, Respondent points out that, under the NFL's collective bargaining agreement, football players receive their negotiated salary as compensation for playing in regular season games and only receive a *per diem* for attending practices. As a result, Respondent argues that practice is only an incidental or ancillary component of his ultimate job and,

therefore, the amount of time he spent practicing in Virginia does not prevent him from being a "covered employee."

The parties' dispute requires us to determine whether Respondent was "regularly employ[ed]" in Maryland such that, in this case, his activity in Virginia is "causal, incidental, or occasional" within the meaning of § 9–203(a)(2). When interpreting a statute, our primary goal is to ascertain legislative intent. *W.M. Schlosser Co.*, 414 Md. at 203, 994 A.2d at 961. Construction of a statute begins and ends with the plain meaning, when that meaning is clear and unambiguous. *Id.* at 203–04, 994 A.2d at 961. Moreover, when we set out to interpret a provision of the Workers' Compensation Act, we construe its provisions "liberally, where possible, in order to effectuate the broad remedial purpose of the statutory scheme." *Uninsured Employers' Fund v. Danner*, 388 Md. 649, 659, 882 A.2d 271, 277 (2005).

We bear in mind, too, that the posture of the instant appeal requires our review of a Commission decision first reviewed by the Circuit Court during a *de novo* trial proceeding. *See* § 9–745(d); *see also General Motors Corp. v. Bark*, 79 Md.App. 68, 73, 555 A.2d 542, 544 (1989) (noting that "an appeal to the circuit court from a decision of the Workers' Compensation Commission is totally different" from an appeal taken generally from an administrative decision under the Maryland Administrative Procedure Act). We are not tasked, however, with review of the Commission's or Circuit Court's factual findings, to which we would owe deference. *W.M. Schlosser Co.*, 414 Md. at 205, 994 A.2d at 962 (quoting *Md. Aviation Admin. v. Noland*, 386 Md. 556, 571, 873 A.2d 1145, 1154 (2005)). Instead, we are called upon to determine whether each respective tribunal was legally correct in its construction and application of § 9–203. *Cosby v. Dep't of Human Res.*, 425 Md. 629, 638, 42 A.3d 596, 602 (2012) (quotation marks omitted).

In that mode, we do not interpret the Workers' Compensation Act in a vacuum; rather, we review the Commission's interpretation of a statute it enforces. We "deter-

mine if the administrative decision is premised upon an erroneous conclusion of law." *W.M. Schlosser Co.*, 414 Md. at 204, 994 A.2d at 962 (2010) (quoting *Md. Aviation Admin.*, 386 Md. at 571, 873 A.2d at 1154). That determination is not made *de novo*, substituting our judgment for that of the Commission. *Motor Vehicle Admin. v. Carpenter*, 424 Md. 401, 413, 36 A.3d 439, 446 (2012). We recognize the Commission's expertise in the field of workers' compensation and consequently grant a degree of deference to the Commission's interpretation. *Id.*, 36 A.3d at 446. "We are under no constraint, however, to affirm an agency decision premised solely upon an erroneous conclusion of law." *Thomas v. State Ret. & Pension Sys.*, 420 Md. 45, 54–55, 21 A.3d 1042, 1047 (2011) (quotation marks omitted).

■ This case does not present the first instance in which we have been tasked with determining whether an individual is regularly employed in this State. Chief Judge Bell, writing for the Court in *McElroy Truck Lines, Inc. v. Pohopek*, explained the test by which we determine the nature of an individual's employment for the purposes of § 9–203(a)(2):

> [W]e have consistently held that the decision in any case was to be determined by its peculiar facts and circumstances. What has resulted has been the development of an elastic test for determining whether an employee is "casual" or "regular," with the factors to be considered being the nature of the employer's work, the scope and purpose of the hiring and the duration of the employment, whether it is occasional, incidental, accidental, or a usual concomitant of the employer's business.

375 Md. at 586–87, 826 A.2d at 481 (quotation marks and citations omitted). Other factors that may inform the determination include "whether the employment arrangement contemplat[ed] a regular presence in the particular jurisdiction," "the consistency of the claimant's work in the particular jurisdiction," and "representations made by the employer as to where the claimant would be working." *Hodgson v. Flippo Construction Company, Inc.*, 164 Md.App. 263, 269, 883 A.2d

211, 215, *cert. denied,* 390 Md. 285, 888 A.2d 342 (2005) (alteration in original) (quotation marks omitted).

Many of these factors do not shed light on whether Respondent was regularly employed in this State during his time with the Redskins. The terms of Respondent's contract set a three-year duration for Respondent's employment, but over those three years Respondent consistently practiced in Virginia and played half of the pre-season and regular season games in the Redskins' home stadium in Maryland.[7] Respondent's contract also contemplated Respondent's presence in both Virginia and Maryland, stipulating that Respondent was required to attend both practice sessions and football games. Essentially, the only factors that can determine whether Respondent was regularly employed in Maryland are the nature of his work and whether that work (whether in Maryland or Virginia) was incidental to the Redskins' business. Put more simply: was Respondent "regularly working" when he was practicing in Virginia or when he was playing games in Maryland?

Our colleagues on the Court of Special Appeals were confronted with this exact question in *Pro–Football, Inc. v. Tupa,* 197 Md.App. 463, 14 A.3d 678 (2011) *aff'd* 428 Md. 198, 51 A.3d 544 (2012). In *Tupa,* the claimant, Tupa, sustained an injury during pre-game warmups at FedEx Field.[8] *Id.* at 468, 14 A.3d at 680. He prevailed before the Commission in his claim for compensation against his employer—the Redskins. *Id.* at 467, 14 A.3d at 680. The Redskins petitioned for judicial review of the award to the Circuit Court for Prince George's County, and then appealed the judgment of the Circuit Court affirming the Commission's decision to the Court of Special

---

**7.** Indeed, none of the Redskins games were played during the time in question in Virginia.

**8.** That Tupa was injured in Maryland, unlike Respondent, makes no difference in the application of *Tupa* to this case. In both cases, the Redskins' argument is predicated on the assertion that a football player employed by the Redskins does not work regularly in Maryland, regardless of where he is injured.

Appeals. *Id.,* 14 A.3d at 680. At the Court of Special Appeals, the Redskins argued, *inter alia,* that the Commission's award was improper because it did not possess the jurisdiction to hear Tupa's claim. *Id.* at 470, 14 A.3d at 682. Specifically, the Redskins asserted, as it does in the case *sub judice,* that Tupa was not a "covered employee" under § 9–203(a) because, as a football player who played for the Redskins, he did not work regularly in Maryland. *Id.* at 471, 14 A.3d at 682. Instead, asserted the Redskins, Tupa only worked "intermittently" in Maryland and worked "primarily" in Virginia. *Id.,* 14 A.3d at 682.

The Court of Special Appeals disagreed, holding that Tupa was a "covered employee" under § 9–203(a). *Id.* at 474, 14 A.3d at 684. The intermediate appellate court first noted, consistent with the test set forth in *Pohopek, supra,* that "[t]he regular or casual/intermittent nature of an individual's employment in Maryland is a fact-dependent determination that must be made on a case-by-case basis." *Tupa,* 197 Md.App. at 472, 14 A.3d at 683. Turning to those facts, the Court of Special Appeals explained that the ultimate purpose of Tupa's employment with the Redskins "was to play in professional football games at FedEx Field in Maryland and at various stadiums around the country." *Id.* at 473, 14 A.3d at 683. The Court recognized that Tupa spent an inordinate amount of his time practicing football in Virginia, yet all of that time "was geared towards improving [Tupa's] performance at the games." *Id.,* 14 A.3d at 683. Moreover, the Court noted that Tupa's employment in Maryland was "consistent and predictable," consisting of "eight regular season and two pre-season games every year." *Id.* at 473, 14 A.3d at 684. The Court of Special Appeals therefore concluded that "Tupa was regularly employed in Maryland because he had an ongoing relationship with his employer, a Maryland corporation, for the purpose of playing in football games, more of which took place in Maryland than in any other state." *Id.* at 474, 14 A.3d at 684.

Our sister court in the District of Columbia came to the same conclusion in *Pro–Football, Inc. v. Dep't of Emp't Ser-*

*vices,* 588 A.2d 275 (D.C.1991). In that case, the Redskins challenged, under D.C.Code § 36–303(a), the award of workers' compensation to fourteen football players who played for the Redskins, which at that time played home games in Robert F. Kennedy Stadium, in the District of Columbia. *Id.* at 277–78. The code provision mandated that the workers' compensation provisions of the D.C.Code applied only to an employee whose "employment is principally localized in the District of Columbia." *Id.* at 278. The Redskins advanced an argument nearly identical to the one it makes in the instant case; namely, that the employment of the Redskins players in Washington D.C., was not "principally localized" in the District of Columbia. *Id.*

The District of Columbia Court of Appeals held otherwise. The court reasoned that "the principal service for which a player is hired by the Redskins is to play regularly scheduled games and earn money for the team." *Id.* at 279. The court analogized the employment situation of a football player to that of an actor, explaining that, "[j]ust as an actor's rehearsals are ancillary to his performance on the stage, so a professional athlete's practice is merely preparatory to the game." *Id.* The court therefore affirmed the award of compensation to those players who had played in home games in RFK Stadium, concluding that their employment was "principally localized" in Washington D.C. *Id.*

We find persuasive the reasoning of the Court of Special Appeals in *Tupa* and the D.C. Court of Appeals in *Department of Employment Services.* The purpose of a football player's employment with a professional football team is to play in professional football games. It is not, as Petitioner seemingly contends, to practice. Football practice is a means to an end—better performance in football games—it is not an end unto itself. Put another way, professional football organizations do not sign "skilled football players" so those players can lift weights and watch game film.[9] The players are

---

9. The NFL's collective bargaining agreement, of which we take judicial notice, provides a separate means by which football teams may sign

signed, and required to attend practice in Virginia, so they can perform well in games to achieve wins and earn revenue for the team. The nature of a football player's employment, then, is defined by the games in which he participates, not the admittedly important, yet nonetheless ancillary, practices he attends.

Applying § 9–203(a)(2) to these circumstances, we hold that Respondent was regularly employed in Maryland while he played for the Redskins between 2002 and 2004. Respondent was working for the Redskins while he played in football games. His contract contemplated that, if healthy, he would play in 24 regular season games and six pre-season games in Maryland over the three years of his employment. The remaining 30 games would be played in various jurisdiction across the United States.[10] Thus, in the language of *Pohopek*, while, when viewed together, the number of football games outside the State equals the amount in State, "when each location to which the [R]espondent travels ... is considered separately, the [R]espondent's presence in none of them is substantially greater than in Maryland." 375 Md. at 594, 826 A.2d at 485.

Because Respondent was regularly employed in Maryland while playing football games here, Respondent's presence in other jurisdictions for practice or playing purposes necessarily was merely incidental or occasional, respectively. Respondent's practice time in Virginia is a subordinate, ancillary consequence of his employment with the team, existing only because Respondent is required to perform in football games.

---

players strictly for practice purposes. These "practice squads" consist of eight players, signed solely for the purpose of practicing with the team. NFL, *Collective Bargaining Agreement*, Article 33 p. 160 (August 4, 2011), http://nfllabor.files.wordpress.com/2010/01/collective-bargaining-agreement-2011–2020.pdf (last visited August 17, 2012). In a "practice squad" contract, a player agrees only to report for "Club meetings and practice sessions, and all other football activities as directed by Club," but not football games. *Id.* at Appendix J p. 281.

10. We understand that, from time to time, NFL pro football teams also play in a football game outside of the United States.

In this sense, Respondent's practice time is both literally and, pursuant to § 9–203(a)(2), statutorily "incidental." Moreover, the amount of time Respondent spends in Buffalo, Philadelphia, or any other city that hosts an NFL franchise is one-tenth of the time Respondent spends in Maryland, given that, during every pre- and regular season, Respondent plays 10 games in Maryland and one game at each of 10 other sites. It follows, then, that the time Respondent spends playing football in a given jurisdiction outside of Maryland is only "occasional" for the purposes of § 9–203(a)(2).

We therefore hold that Respondent is therefore a "covered employee" for purposes of § 9–203. In accordance with § 9–203(a)(2), Petitioner "regularly employs [Respondent] within this State"; and Respondent was injured in Buffalo, Philadelphia, and Virginia while working for the Redskins "outside of this State on a[n] ... incidental or occasional basis." The Commission was legally incorrect to conclude that it did not have jurisdiction to hear Respondent's claim. The Court of Special Appeals correctly reversed the judgment of the Circuit Court affirming the Commission's decision and remanded the matter so that Respondent could move forward with B678846, B678848, B678849, B678850, and B678851 before the Commission.

**JUDGMENT OF THE COURT OF SPECIAL APPEALS AFFIRMED. COSTS IN THIS COURT TO BE PAID BY THE PETITIONER.**